In re BOLOGH et al.

(District Court, S. D. New York. February 17, 1911.)

1. BANKS AND BANKING (§ 71*)—INSOLVENCY—ACTS OF SUPERINTENDENT OF BANKS.

Under New York Banking Law (Consol. Laws 1909, c. 2) §§ 19, 190, authorizing control of certain banks by the superintendent of banks under specified circumstances, a superintendent taking charge of a banking institution does so by virtue of statutory authority as superintendent, and not as a result of any proceeding in court. though his administration is, in certain respects, subject to the action of the state Supreme Court.

[Ed. Note.—For other cases, see Banks and Banking, Dec. Dig. § 71.*]

2. BANKRUPTCY (§ 211*)—FUNDS—DEPOSITARY—INSOLVENCY—PRIORITY.

New York Banking Law (Consol. Laws 1909, c. 2) § 19, declares that dividends to be paid by the superintendent of banks out of the assets of institutions in his charge for administration shall be paid to such persons and in such amounts and upon such notice as may be directed by the Supreme Court in the judicial district in which the principal office of such corporation or individual banker is located. *Held*, that where a New York trust company, prior to failure, had been appointed a depositary for bankruptcy funds, whether deposits made by trustees in bankruptcy were entitled to preference under Rev. St. U. S. § 3466 (U. S. Comp. St. 1901, p. 2314). giving preference to debts due the United States. was solely within the jurisdiction of the state Supreme Court, and could not be determined on a motion in bankruptcy for orders requiring the superintendent of banks to pay out such deposits.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 211.*]

3. BANKRUPTCY (§ 20*)—DEPOSITARIES—BONDS—INSTRUCTIONS.

Where a depositary of bankruptcy funds executed a bond to the United States to pay out all moneys deposited with it in such depositary only as provided by the acts of Congress and the rules of court applicable thereto and to abide by all lawful orders and decrees of the court, such provisions applied only to the depositary while in possession of its own assets and conducting its ordinary business, and did not confer on the bankruptcy court power to make summary orders for the payment of deposits made with the trust company by receivers and trustees in bankruptcy, after the trust company had passed into the hands of the superintendent of banks for liquidation.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 20.*]

4. BANKRUPTCY (§ 20*)—BANKRUPTCY FUNDS—DEPOSITS—EFFECT.

Where a receiver or other officer of a court of bankruptcy deposits money in a designated depositary, the same relation of debtor and creditor is created as in the case of an ordinary bank deposit, so that the bankruptcy court no longer has the same jurisdiction over it as it has over funds or property in the possession of a receiver or trustee.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 20.*]

In the matters of bankruptcy of Philip Bologh and others, of Frederick Rosenzweig, individually and trading as Art Novelty Company,

_____
*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

and of Simon Lindau. Motions by receiver in bankruptcy in the Rosenzweig and Lindau cases and by the trustee in bankruptcy in the Bologh case for an order directing the New York Superintendent of Banks to pay to the respective petitioners moneys deposited by them in the Carnegie Trust Company. Denied.

Myers & Goldsmith (E. J. Myers, of counsel), for trustee in bankruptcy of Philip Bologh and David Samlowitz and receiver in bankruptcy of Frederick Rosenzweig.

James, Schell & Elkus (Abram I. Elkus, of counsel), for receiver in bankruptcy of Simon Lindau.

White & Case (George B. Case and Joseph M. Hartfield, of counsel), for Superintendent of Banks of State of New York.

HOLT, District Judge. These are three similar motions, made by a receiver in bankruptcy in each of the Rosenzweig and Lindau cases, and by a trustee in bankruptcy in the Bologh case, for orders directing the superintendent of banks of the state of New York to pay to the respective petitioners certain amounts deposited by them with the Carnegie Trust Company. In 1907 this court designated the Carnegie Trust Company as a depositary for the money of bankrupt estates, pursuant to section 61 of the bankrupt act (Act July 1, 1898, c. 541, 30 Stat. 562 [U. S. Comp. St. 1901, p. 3446]). The Carnegie Trust Company, pursuant to such section, thereupon gave, as principal, with the United States Fidelity & Guaranty Company as surety, a bond to the United States, conditioned as follows:

"That if the said Carnegie Trust Company shall well and truly account for and pay over all moneys deposited with it as such depository, and shall pay out the same only as provided by the act of Congress, in such case made and provided, and the rules of court applicable thereto, and shall abide by all lawful orders and decrees of the court, in and by the premises, then this obligation to be void, otherwise to remain in full force and virtue."

Thereafter deposits were made by the petitioners of money in their hands as receiver or trustee respectively of the estates of the above-named bankrupts. On January 7, 1911, pursuant to section 19 of the banking law of New York (Consol. Laws 1909, c. 2), the superintendent of banks took possession of the property and business of the Carnegie Trust Company, and is now proceeding with the liquidation of its affairs in accordance with said section. That section provides, among other things, as follows:

"Whenever it shall appear to the superintendent that any corporation or individual banker to which this chapter is applicable has violated its charter or any law of the state, or is conducting its business in an unsafe or unauthorized manner, * * * or if from any examination or report provided for by this chapter the superintendent shall have reason to conclude that such corporation or individual banker is in an unsound or unsafe condition to transact the business for which it is organized, or that it is unsafe or inexpedient for it to continue business, or if any such corporation or individual banker shall neglect or refuse to observe an order of the superintendent specified in section seventeen of this chapter, the superintendent may forthwith take possession of the property and business of such corporation or individual banker, and retain such possession until such corporation or individual banker shall resume business, or its affairs be finally liquidated as herein provided."

Section 190 of the banking law further provides:

"No bond or other security, except as hereinafter provided, shall be required from any such corporation for or in respect to any trust, nor when appointed executor, administrator, guardian, trustee, receiver, committee or depositary. * * * If dissolved by the Legislature or the court, or otherwise, the debts due from the corporation as such executor, administrator, guardian, trustee, committee or depositary shall have the preference."

The superintendent of banks, in taking charge of a banking institution, does so by virtue of his authority as such superintendent under the statute, and not as a result of any proceeding in court. His authority is somewhat analogous to that of a receiver of a national bank appointed by the Comptroller of the Currency. Section 19 of the banking law, however, provides that his administration in certain respects shall be subject to the action of the Supreme Court of the state of New York. Thus it is provided that, upon taking possession of the business of a corporation or individual banker:

"The superintendent * * * upon the order of the Supreme Court may sell or compound all bad or doubtful debts, and on like order may sell all the real and personal property of such corporation or individual banker on such terms as the court shall direct." He may reject any claim filed, serving notice of such rejection upon the claimant, and "an action upon the claim so rejected must be brought within six months after such service. * * * The compensation of the special deputy superintendents, counsel and employés and assistants, and all expenses of supervision and liquidation, shall be fixed by the superintendent subject to the approval of the Supreme Court. * * * At any time after the expiration of the date fixed for the presentation of claims the superintendent may out of the funds remaining in his hands after the payment of expenses declare one or more dividends, and after the expiration of one year from the first publication of notice to creditors he may declare a final dividend, such dividends to be paid to such persons, and in such amounts, and upon such notice, as may be directed by the Supreme Court in the judicial district in which the principal office of such corporation or individual banker is located. Objections to any claim not rejected by the superintendent may be made by any party interested by filing a copy of such objections with the superintendent, who shall present the same to the Supreme Court at the time of the next application to declare a dividend. The court may make proper provision for unproved or unclaimed deposits. * * * The superintendent may pay over the moneys so held by him to the persons respectively entitled thereto upon being furnished satisfactory evidence of their right to the same. In cases of doubt or conflicting claims he may require an order of the Supreme Court authorizing and directing the payment thereof."

By these and other general provisions in the banking law, it appears that, although the superintendent of banks, in taking possession of the assets of a banking institution, acts by virtue of the authority conferred upon him by law, and, in taking such possession, is not acting strictly as an officer of a court, nevertheless his general administration of the trust is subject to the supervision and control of the state Supreme Court in most respects.

It is urged in support of this motion that the indebtedness of the Carnegie Trust Company to receivers and trustees in bankruptcy on their deposit accounts is entitled to priority of payment under section 3466 of the United States Revised Statutes (U. S. Comp. St. 1901, p. 2314). Section 3466 provides that, whenever any person indebted to the United States is insolvent, the debts due to the United States

shall be first satisfied. It is argued that the designation by this court of the Carnegie Trust Company as a depositary for bankruptcy funds, and the bond given by the trust company upon such appointment to the United States, establish that the indebtedness of the trust company to receivers and trustees in bankruptcy is an indebtedness to the United States, and that therefore such indebtedness is entitled to priority.

It is also claimed that such indebtedness is entitled to priority under the provisions of section 190 of the banking law, which provides that if such a banking institution is dissolved by the Legislature or the court, or otherwise, the debts due from the corporation as such executor, administrator, guardian, trustee, committee, or depositary shall have the preference.

It does not seem to me to be necessary or proper for this court to pass upon these questions of priority, because I think that the determination of these questions is vested by law in the Supreme Court of the state of New York. The provision in section 19 of the banking law that the dividends to be declared by the superintendent of banks are "to be paid to such persons and in such amounts, and upon such notice, as may be directed by the Supreme Court in the judicial district in which the principal office of such corporation or individual banker is located," in my opinion, confers upon the New York Supreme Court the sole power of determining what creditors of the trust company are entitled to preference, and what amounts shall be paid to them as dividends.

It is urged that the provisions in the bond by which the Carnegie Trust Company agreed to pay out all moneys deposited with it as such depositary "only as provided by the act of Congress in such case made and provided, and the rules of court applicable thereto," and to "abide by all lawful orders and decrees of the court," confer authority upon this court to make summary orders for the payment of the deposits made in the trust company by receivers and trustees in bankruptcy. In my opinion, those provisions only applied to the trust company while in possession of its own assets and conducting its ordinary business. If, while so engaged, the trust company should arbitrarily refuse to honor the checks of a receiver or of a trustee, when duly countersigned by a referee in bankruptcy as required by the rule, it is possible that this court might exercise a summary jurisdiction over its depositary; but, in my opinion, as soon as the superintendent of banks took possession of the assets, stopped the further continuance of business, and substantially entered upon the liquidation of the company's affairs, the sole supervision and control of such liquidation, so far as it was conferred upon any court, was conferred upon the state Supreme Court.

It is argued that the court, in designating a depositary in which a receiver is required to deposit that portion of the assets which consists of money, in effect appoints two custodians, one the receiver, who is to act as a custodian of the assets other than cash, and the other a trust company, which is to act as a custodian of the cash, and that therefore any trust company designated as a depositary is subject to

the summary order of the court in the same manner as a receiver. This suggestion seems to me unsound. A receiver or other officer of the court who deposits money in a trust company, in my opinion, simply creates thereby the same relation of debtor and creditor as is created by any bank deposit. The debt may have a preference, but it is nevertheless a debt, and I do not think that the bankruptcy court can exercise the same summary authority over such a depositary that it can over a receiver. If the trust company is appointed directly a receiver, then the bankruptcy court can undoubtedly, so long as the trust company continues to conduct its business as a solvent institution, exercise the same immediate control over it that it can over other receivers; but, when it simply acts as a depositary for receivers' funds, it seems to me that, even when the trust company is conducting its business in the ordinary way, the court has no summary jurisdiction over it. But, in any event, when a trust company has ceased to conduct its business, and its property has been taken possession of by an officer authorized to liquidate its affairs, I think it clear that a court of bankruptcy cannot, by a summary order, direct that the bankruptcy funds deposited with it shall be paid over. If such a power existed, bankruptcy receivers and trustees might obtain a preference over other preferred creditors under the statute. If a trust company had been appointed directly a receiver or a trustee, and had become insolvent, and its assets had been taken possession of by an officer authorized to wind up the institution, I do not think that in that case the court could order the funds turned over, by a summary order, in the same manner in which it could make such an order if the company had remained solvent. When the insolvency of a corporation occurs, or any such condition arises that the law authorizes an officer to step in and stop the business, and take possession of the property for the purposes of liquidation, the status is completely changed, and the officer who succeeds to the possession of the assets is not subject to the same control, or to be proceeded against in the same summary manner, as the company was in its capacity as an officer of the court, so long as it continued in business.

The case of Davis v. Elmira Savings Bank, 161 U. S. 275, 16 Sup. Ct. 502, 40 L. Ed. 700, is somewhat analogous to this case. In that case the New York banking law provided that all the property of a bank or trust company which should become insolvent should in the first place be applied to the payment in full of any sum of money deposited by a savings bank. A New York savings bank deposited money in a national bank. The national bank became insolvent, and the Comptroller of the Currency took possession, and appointed a receiver of its assets, under the provisions of the national bank act. That statute provides that, after refunding any outstanding United States notes:

"The comptroller shall make a ratable dividend of the money so paid over to him by such receiver on all such claims as may have been proved to his satisfaction."

The savings bank claimed that it was entitled to a preference, and the Court of Appeals of the state of New York held (Elmira Savings

Bank v. Davis, 142 N. Y. 590, 37 N. E. 646, 25 L. R. A. 546), that the national bank, having accepted a deposit of money from a savings bank with full knowledge of the law of the state, was bound by it, and that the savings bank was entitled to a preference. But the United States Supreme Court, on appeal, reversed the decision, and held that there could be no preference in the distribution of the funds of an insolvent national bank except such as was provided for by the national bank act. The case is not strictly analogous to the case at bar because a state statute which conflicts with a United States statute is controlled by the United States statute; whereas, the law of the United States is just as valid and obligatory in a state court as in a federal court. But the general principle upon which the decision in Davis v. Elmira Savings Bank is based, namely, that the law under which the affairs of an insolvent corporation are being liquidated governs the procedure, and that the court established by those laws to supervise the liquidation has the exclusive supervision of such liquidation, seems to me to apply to this case.

My conclusion is that these motions should be denied.