LAMB v. TOWNSHEND (two cases).

In re SMITH.

Nos. 3594, 3602.

Circuit Court of Appeals, Fourth Circuit.
June 11, 1934.

Philip P. Gibson, of Huntington, W. Va., for appellant.

Okey P. Keadle, of Huntington, W. Va., for appellee.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

PARKER, Circuit Judge.

This is an appeal by the receiver of an insolvent state bank from a turnover order, entered summarily in the bankruptcy proceedings relating to the bankruptcy of one R. R. Smith. The order directed the receiver of the insolvent bank to pay to the trustee in bankruptcy of Smith the amount of funds belonging to the bankrupt estate which had been deposited in the bank by the trustee in bankruptcy prior to the receivership. The receiver challenged the jurisdiction of the court on the ground that he was administering the assets of the failed bank as a trust fund pursuant to the statutes of West Virginia, and was therefore an adverse claimant of the funds in his possession, and not subject to summary orders of the court with respect thereto. The matter is before us on appeal under section 24a of the Bankruptcy Act (11 USCA § 47(a) as well as on appeal to superintend and revise in matter of law under section 24b (11 USCA § 47(b).

The Huntington Banking & Trust Company, a state bank of West Virginia, was designated by the District Court of the United States for the Southern District of that state as one of the depositories of bankruptcy funds, by order of court entered March 1, 1918. The order of designation fixed the bond of each depository at $10,000, and contained the following provision: "In the event the amount on deposit in any designated depository exceeds the amount of the bond as above, the bank shall at once increase its bond to cover said excess." The bank qualified by giving bond in the sum of $10,000 as required in the order; and on April 3, 1931, gave a new and superseding bond in the sum of $40,000. By June 10, 1932, the bankruptcy funds on deposit in the bank exceeded the amount of the bond, but no new bond was given. Thereafter the trustee in bankruptcy of the Smith estate deposited $42,215.41 in the bank, and it is for this amount that the turnover order was entered.

The bank became insolvent and closed its doors on April 8, 1933. At that time it held bankruptcy deposits amounting to $84,979.-03, of which $49,616.45 had been deposited by the trustee of the Smith estate. As heretofore stated, $42,215.41 of this amount was deposited after the total amount of the bankruptcy deposits had exceeded the amount of the bond. On May 31, 1933, the appellant F. O. Lamb was appointed receiver of the bank by the Commissioner of Banking of West Virginia pursuant to Chapter 31, art. 8, § 32, of the Official Code of West Virginia of 1931, and immediately took charge of its assets and began liquidating them for the benefit of creditors, and for distribution in accordance with the provisions of the law of West Virginia.

On September 25, 1933, the trustee in bankruptcy of the Smith estate obtained an order from the court below requiring the receiver of the bank to show cause why an order should not be entered directing him, out of the assets of the bank in his hands, to turn over to the trustee in bankruptcy the sum of $42,215.41. This order was based upon a petition which alleged that the bank had accepted the deposits in question after the amount of the bond on file had been exceeded; that the former trustee in bankruptcy, who made the deposits, was a stockholder, director, and member of the executive committee of the bank and well knew that the bond had been exceeded; and that the deposits for these reasons were illegal and unauthorized. There was no allegation that the funds so deposited had been held intact or of any facts showing that the funds which came into the hands of the receiver were impressed with a trust in favor of the trustee in bankruptcy; and there was no request that a trust be declared or that trust funds be segregated from the general funds in the hands of the receiver.

The receiver filed motion to dismiss the proceeding in which he objected to the jurisdiction of the court and challenged its power to proceed summarily by order affecting the assets in his hands. As grounds for the

motion, he set forth his appointment as receiver by the commissioner of banks alleging that it was his duty to conserve as a trust fund the assets intrusted to him and to distribute them in accordance with the law of the state, which gave no preference to claims for deposit of bankruptcy funds; that he had been directed by the commissioner of banking of West Virginia to challenge the jurisdiction of the court and to insist that the funds in his hands be administered and distributed in accordance with the laws of West Virginia; that under the laws of that state certain claims which had been filed with him were entitled to priority of payment from the funds in his hands, including draft and collection items amounting to $4,868.02, accounts less than $5 amounting to $3,650.08, fiduciary funds amounting to $57,425.89, and deposits of public funds amounting to $326,102.69; that the total of funds held by him on deposit was only $45,838.52; and that, if required to pay the $42,215.41 on summary order, he would be without funds to pay the claims given priority by state law, and there was serious doubt as to whether the entire remaining assets of the bank would be sufficient to pay these preferred claims.

The court denied the motion to dismiss, holding that the acceptance of the deposits in question was illegal and unauthorized; that the funds deposited remained in the custody of the court and subject to its order; and that the court had power to direct that they be turned over to the trustee in a summary proceeding.

■■■ The question as to whether the court had jurisdiction to proceed summarily against the receiver depends upon whether the adverse claim of the receiver to the assets of the failed bank in his possession was substantial and meritorious or merely colorable and fictitious. Harrison v. Chamberlin, 271 U. S. 191, 46 S. Ct. 467, 70 L. Ed. 897; May v. Henderson, 268 U. S. 111, 45 S. Ct. 456, 69 L. Ed. 870. And in this connection it is to be noted that we are not dealing with a case where a receiver of a state court, or a receiver under state insolvency laws, is withholding from the trustee in bankruptcy the assets of a corporation which has been adjudged bankrupt, as in Gamble v. Daniel (C. C. A. 8th) 39 F.(2d) 447, and Miller v. Potts (C. C. A. 6th) 26 F.(2d) 851. Nor is it one where a state officer is holding property under an attachment avoided by the bankruptcy, as in Commercial Credit Co. v. Street (C. C. A. 9th) 65 F.(2d) 102. The assets involved are assets of the insolvent state

bank. The bankruptcy funds deposited with that bank, whether rightly or wrongly, were deposited as a general deposit and became mingled with the general assets of the bank. The question, then, is whether the bankruptcy court, without tracing into assets which have come into the hands of the receiver the bankruptcy funds deposited, can summarily order the receiver, out of the general assets in his hands, to pay to the trustee an amount equal to the bankruptcy deposits, to the prejudice of other creditors of the bank having an interest in such assets. It is clear, we think, that this question must be answered in the negative.

■■ The deposit of bankruptcy funds in an authorized depository ordinarily vests the ownership of the funds in the bank and creates a mere indebtedness on the part of the bank to the trustee making the deposit. Florida Bank & Trust Co. v. Union Indemnity Co. (C. C. A. 5th) 55 F.(2d) 640, 83 A. L. R. 1102; In re Bologh (D. C.) 185 F. 825, 828, 829; Gardner, Trustee, v. Chicago Title & Trust Co., 261 U. S. 453, 43 S. Ct. 424, 67 L. Ed. 741, 29 A. L. R. 622; Hood, Com'r of Banks, v. Brownlee (C. C. A. 4th) 62 F. (2d) 675. And the bank does not become charged with the duties of a trustee to segregate and invest the funds because it accepts them with knowledge that they are subject to a trust. Santee Timber Corporation v. Elliott et al. (C. C. A. 4th) 70 F.(2d) 179; 3 R. C. L. 518; 7 C. J. 633; notes in 37 A. L. R. 120, and 53 A. L. R. 564. As said by the Supreme Court in Marine Bank v. Fulton County Bank, 2 Wall. 252, 256, 17 L. Ed. 785:

"All deposits made with bankers may be divided into two classes, namely, those in which the bank becomes bailee of the depositor, the title to the thing deposited remaining with the latter; and that other kind of deposit of money peculiar to banking business, in which the depositor, for his own convenience, parts with the title to his money, and loans it to the banker; and the latter, in consideration of the loan of the money and the right to use it for his own profit, agrees to refund the same amount, or any part thereof, on demand. The case before us is not of the former class. It must be of the latter."

■ But, even though a mere indebtedness be created by the deposit, we think that, so long as the bank remains open and solvent, its liability can be enforced in a proper case by a turnover order in a summary proceeding. In such case the bank has been acting as a

depository under order of court. It has undertaken to pay out upon order the funds deposited with it. And rights of third persons have not attached to its assets, which are held to meet deposits as they may be called for. A refusal to honor checks on the deposit account in such case, therefore, is tantamount to a denial of the right of the trustee to the account; and such right can be enforced by summary order, just as in the case of any other wrongful withholding of property to which the trustee is clearly entitled. While the right to maintain a summary proceeding in such circumstances has been questioned (see In re Bologh [D. C.] 185 F. 825, 829), such proceeding seems clearly proper. It has been sustained with respect to deposits made by the bankrupt himself prior to adjudication. Shortridge v. Utah Savings & Trust Co. (C. C. A. 10th) 40 F.(2d) 328; Reed v. Barnett Nat. Bank (C. C. A. 5th) 250 F. 983; In re Radley Steel Const. Co. (D. C.) 212 F. 462; Twentieth Street Bank v. Gilmore (C. C. A. 4th) 71 F.(2d) 594, this day decided. And a summary proceeding to require assignees for creditors to turn over funds deposited by the bankrupt and by themselves, and improperly applied on a note held by the bank, has been sustained. May v. Henderson, 268 U. S. 111, 45 S. Ct. 456, 69 L. Ed. 870. A fortiori, it would seem that a bank with which the trustee himself has made deposits may be required by summary order to recognize the right of the trustee in the deposit account, when no substantial adverse claim is asserted thereto.

When insolvency of the bank has intervened, however, a different situation is presented. It is no longer merely a question as to whether the trustee is entitled to the account. That is admitted. The question is what he is entitled to receive upon the account. The assets of the bank are no longer held by it to be applied upon its obligations, with the duty resting upon it to honor upon presentation each check properly drawn against deposits. They are held by the receiver as a trust fund to be applied on the claims of creditors in accordance with their rights under the laws regulating the liquidation of insolvent banks. As was well said by Judge Holt in Re Bologh, supra (D. C.) 185 F. 825, 829:

"But, in any event, when a trust company has ceased to conduct its business, and its property has been taken possession of by an officer authorized to liquidate its affairs, I think it clear that a court of bankruptcy cannot, by a summary order, direct that the bankruptcy funds deposited with it shall be paid over. If such a power existed, bankruptcy receivers and trustees might obtain a preference over other preferred creditors under the statute. If a trust company had been appointed directly a receiver or a trustee, and had become insolvent, and its assets had been taken possession of by an officer authorized to wind up the institution, I do not think that in that case the court could order the funds turned over, by a summary order, in the same manner in which it could make such an order if the company had remained solvent. When the insolvency of a corporation occurs, or any such condition arises that the law authorizes an officer to step in and stop the business, and take possession of the property for the purposes of liquidation, the status is completely changed, and the officer who succeeds to the possession of the assets is not subject to the same control, or to be proceeded against in the same summary manner, as the company was in its capacity as an officer of the court, so long as it continued in business."

The question here involved was recently before Judge Knight of the Western District of New York, sitting in the Eastern District of Michigan, in the case of In re Battani et al., 6 F. Supp. 376, 379; and we agree with the following statement of the law made by him in the course of the decision of that case. Said he:

"The orderly and proper administration of the banking laws as regards insolvent banks requires that debts should be paid on a ratable basis and when and as the funds of the bank justify distribution. The statute requires that the distribution be so made that each creditor and depositor receive the share to which he is legally entitled. Necessarily a determination in respect to distribution must be made by the Comptroller of the Treasury. Such determination, however, is subject to the order of the proper court in case of untoward delay or proposed illegal distribution. So, with regard to any ratable proportion to which these bankruptcy estates are entitled, the distribution should be made by the Comptroller as hereinbefore indicated. The finding that a summary order issue directing the payment of all deposits made in these several estates cannot be sustained."

Nor do we think that jurisdiction to enter the summary order can be sustained on the theory that the assets of the bank should be held to be impressed with a constructive trust because the deposits were made after the amount of the depository bond had been

exceeded. There is grave doubt whether under the facts here a constructive trust could be declared with respect to the deposits so made. See Hancock County v. Hancock Nat. Bank of Sparta (C. C. A. 5th) 67 F.(2d) 421, 422. But, without passing on that question, it is clear that to reach assets in the hands of the receiver on the theory that they were impressed with a constructive trust it would have been necessary, not only to establish the trust, but also to trace the trust funds into some fund or some specific property which had come into the hands of the receiver, or to show that the assets in his hands had been directly augmented as a result of the conversion of the trust funds by the bank. See Swan v. Children's Home Society of West Virginia (C. C. A. 4th) 67 F.(2d) 84, 88, and cases there cited. For the establishment of such trust and the tracing of trust funds, a plenary suit was of course necessary; for the claim of the receiver to the assets was manifestly an adverse claim, where he was vested with them by law, and his right to them could be questioned only by establishing a trust and tracing the trust funds into them. And an adverse claim "is to be deemed of a substantial character when the claimant's contention 'discloses a contested matter of right, involving some fair doubt and reasonable room for controversy,' Board of Education v. Leary, supra, 527 [of 236 F.], 149 C. C. A. 573, in matters either of fact or law; and is not to be held merely colorable unless the preliminary inquiry shows that it is so unsubstantial and obviously insufficient, either in fact or law, as to be plainly without color of merit, and a mere pretense." Harrison v. Chamberlin, 271 U. S. 191, 195, 46 S. Ct. 467, 469, 70 L. Ed. 897.

For the reasons stated, the court was without jurisdiction to enter the order, and same must be reversed and the summary proceeding dismissed, without prejudice, however, to the right of the trustee to proceed in a plenary suit as he may be advised. In such suit the rights of general creditors, as well as of those claiming preferential payment from the assets or seeking to impress a trust thereon, can be adequately safeguarded, which would be manifestly impossible in a summary proceeding to obtain a turn over order.

The question arises as to whether the proper method of review was by appeal under section 24a of the Bankruptcy Act (11 USCA § 47(a), or by appeal to superintend and revise under section 24b (11 USCA § 47(b). We think that, as the proceeding was instituted by the trustee for the recovery of property in the possession of the receiver, to which the latter asserted an adverse claim, it is "a controversy arising in a bankruptcy proceeding," as distinguished from an administrative "proceeding" in bankruptcy, and that it is reviewable by appeal under section 24a. Harrison v. Chamberlin, 271 U. S. 191, 193, 46 S. Ct. 467, 70 L. Ed. 897; Taylor v. Voss, 271 U. S. 176, 187, 46 S. Ct. 461, 70 L. Ed. 889; In re Times Square Auto Supply Co. (C. C. A. 2d) 47 F.(2d) 210. In No. 3594, therefore, the appeal to superintend and revise will be dismissed. In No. 3602 the order appealed from will be reversed.

No. 3594 appeal dismissed.
No. 3602 reversed.