# UNION TRUST CO. OF MARYLAND v. TOWNSHEND.

## No. 5014.

Circuit Court of Appeals, Fourth Circuit.

Feb. 8, 1943.

Before PARKER, SOPER, and DOBIE, Circuit Judges.

Walter H. Buck and Eben F. Perkins, both of Baltimore, Md., for appellant.

Okey P. Keadle, of Huntington, W. Va., for appellee.

PARKER, Circuit Judge.

This is the fourth appeal in the matter of R. R. Smith, bankrupt, involving bonds or the proceeds of bonds upon which the Union Trust Company of Maryland held an equitable lien. In Lamb v. Townshend, 4 Cir., 71 F.2d 590, we held that proceeds of the bonds deposited in the failed Huntington Bank & Trust Co. did not give rise to a trust on funds in the hands of its receiver and that the bankruptcy court was without jurisdiction to enter a summary order directing that such funds be turned over to the trustee in bankruptcy. In Union Trust Co. v. Townshend, 4 Cir., 101 F.2d 903, we held that the Union Trust Company had an equitable lien upon the bonds and their proceeds. In Sehon-Stevenson, etc., Co. v. Union Trust Co., 4 Cir., 113 F.2d 968, a proceeding for marshaling assets, we held that the Union Trust Company was not required to credit on its claim the loss arising from the deposit of the proceeds of the bonds in the insolvent bank. The question raised by this appeal is whether the District Court should have appointed a special master to examine into the facts with a view of establishing liability on the part of the estate of a deceased trustee in bankruptcy and his legal advisers for selling the bonds and depositing the proceeds of sale in the bank that failed.

R. R. Smith was adjudged bankrupt on November 30, 1931, and F. C. Leftwich, since deceased, was appointed trustee in bankruptcy of his estate. A controversy arose between the trustee and the Union Trust Company of Maryland as to the lien claimed by the latter on 72 bonds of the Columbia Gas and Electric Company. This controversy was before us in Union Trust Co. v. Townshend, supra, wherein the decision was in favor of the trust company's contention. Before the case was instituted, however, the bonds were delivered to Leftwich, trustee in bankruptcy, to be held by him without prejudice to the rights of the trust company, and on March 28, 1932, an order was entered by the referee in bankruptcy directing that they be sold. No attempt was made by the Union Trust Company to have this order reviewed and 55

of the bonds were sold by the trustee for the sum of $48,489.96 and the proceeds of sale were deposited by him in the Huntington Bank and Trust Co. In April, 1933, that institution was closed as insolvent and in the following September Leftwich resigned as trustee, and the appellee Townshend was elected in his stead. The proceedings taken by Townshend to recover from the failed bank and the sureties on depository bonds are thus described in the findings of the lower court:

"From time to time thereafter suits were instituted and prosecuted by the Trustee, of every conceivable nature, through such special counsel, including a summary proceeding in this Court against the Receiver of the bank, a plenary suit in the State Court against the Receiver, suits against the sureties upon two separate depository bonds, an action against the former Trustee and the surety upon his bond, and an involuntary petition in bankruptcy against one of the sureties upon one of the depository bonds instituted for the purpose of avoiding preferences obtained by other creditors. All of these proceedings were prosecuted to conclusion, and all judgments obtained have been settled under approval of the creditors and the court. There was recovered from the funds of this estate on deposit in said bank, the sum of $25,098.20, of which sum $13,091.20 was recovered from the sureties on the depository bonds of the bank and the surety on the former Trustee's bond."

On October 12, 1940, the Union Trust Company filed a petition in the lower court complaining of the allowance of a fee out of funds to which it was entitled and asking that a special master be appointed to investigate the facts as to the sale of the bonds and the deposit of the proceeds thereof in the bank which failed. The judge referred the petition to the referee in bankruptcy, who accorded the parties a full hearing and filed a comprehensive report. The judge reviewed the report, disposed of the matter of the fee, which is no longer in controversy, and made the following statement in his opinion with respect to the sale of the bonds and deposit of the proceeds:

"The second point urged by the Trust Company relates to the sale of the bonds, and the duty of the trustee to take further action regarding the deposit of the funds in the insolvent bank. The Trust Company says that there was no reason why Leftwich,.

trustee, should have sold these bonds. Whether that is true or not, the fact remains that in a proper manner the trustee presented to the referee charged with the administration of this estate, a petition asking authority to sell the bonds for reasons stated in the petition. The matter was brought on for hearing at a meeting of the creditors, at which the trust company was represented by its counsel. After consideration of the matter, the referee ordered the bonds sold. While formal objection was noted by the trust company's attorney in the order, no further action in respect thereto was taken. No stay of the sale of the bonds was requested and no petition for review of the referee's order was filed. The trust company had insisted from the beginning that it was the owner of the bonds, and it is reasonable to believe that its objection to the sale, noted in the record, was of a formal nature to prevent any waiver of its petition claiming ownership of the bonds. The order of the referee became final within ten days after the date of the entry of such order. The action of the trustee in making sale of the bonds after such finality was entirely legal and proper. The sale continued over a period of several months, during which time no action was taken by the Trust Company seeking to set aside or vacate the authority given the trustee, and it was only long after failure of the bank that further objection was made. There is nothing the present trustee can do at the present time relating to the sale of these bonds. The trustee has pursued to a finality every avenue of recovery open to him. Suits have been brought against everyone having any legal connection with the deposit of these funds. He has sued the receiver of the bank in which the funds were deposited, all the sureties on the depository bonds, the former trustee, and the surety on his bond. The Trust Company makes no suggestion as to what the trustee has left undone, or as to what further action the trustee should take in discharge of his duties. In my opinion, the trustee and his attorney have diligently done everything possible to recover the deposited funds, and there is nothing more for them to do."

A careful reading of the briefs and the portions of the record printed as appendices thereto discloses no reason for disturbing the court's action. Appellant complains of the reference to the referee in bankruptcy because it was he who made the order of sale complained of; but it is perfectly clear from the record, and from appellant's own admissions, that it has no ground for attacking the order of sale in which it acquiesced, and that its only possibility of complaint relates to the deposit of the proceeds of sale in the bank which became insolvent. It does not appear that the referee had anything whatever to do with this; and we see no reason why he was not a proper person to conduct the inquiry regarding it. No complaint is made that appellant was denied opportunity at the hearing before the referee to offer any proof in its possession or to conduct any investigation that it desired, and the record is barren of any ground which would justify the court in setting aside the referee's report and re-referring the matter to a special master.

Appellant refers to its reservation of "any and all rights to proceed against the estate of the former trustee and the surety on his bond, and any others who may be liable", and expresses concern lest future prosecution of its rights so reserved may be affected by the court's finding in refusing to re-refer the case. There is no ground for such apprehension. Appellant will not be precluded from prosecuting any rights it may have against the estate of the former trustee or others because the court has ruled that no ground is shown for ordering the trustee in bankruptcy to institute litigation or conduct further inquiry with regard thereto; and if suits are instituted by appellant in prosecution of such rights, there is no reason why it may not have, under Rule 26 of the Rules of Civil Procedure 28 U.S.C.A. following section 723c, full discovery of all facts which may be pertinent to the controversy.

For the reasons stated, the order appealed from will be affirmed.

Affirmed.