In the Matter of UNION NATIONAL BANK AND TRUST COMPANY OF SOUDERTON, PENNSYLVANIA
and
The Citizens Bank, formerly the Citizens and Southern Bank of Philadelphia, Adjudging said Depositories as Contemnors.

Misc. No. 3424.

United States District Court
E. D. Pennsylvania.

Aug. 1, 1968.

Irwin S. Rubin, Souderton, Pa., for Union National Bank and Trust Company of Souderton.

Sheldon S. Toll, Philadelphia, Pa. for The Citizens Bank; Gerald A. Gleeson, Jr., Montgomery, McCracken, Walker & Rhoads, Philadelphia, Pa., of counsel.

Donald M. Bowman, Gold, Bowman & Korman, Philadelphia, Pa., for Reliance Ins. Co., Inc.

## OPINION AND ORDER

CLARY, Chief Judge.

This matter is before the Court on the motions of The Citizens Bank (hereinafter "Citizens") and the Union National Bank and Trust Company of Souderton, Pennsylvania (hereinafter "Union National"), to dismiss a rule to show cause why they should not be adjudged in contempt of Court. Citizens grounds its motion on two bases—(1) lack of subject matter jurisdiction, Rule 12(b) (1) F.R.Civ.P., and (2) failure to state a claim upon which relief can be granted, Rule 12(b) (6) F.R.C.P. Union National relies solely on the latter ground.

The underlying cause of action was instituted by Reliance Insurance Company (hereinafter "Reliance") on a petition to show cause why the two above-mentioned banks should not be adjudged guilty of contempt for acting in direct contradiction and defiance of the Orders issued by Judge John W. Lord, Jr., of this Court, which, in effect, designated these banks as lawful depositories for bankruptcy funds. Generally, the banks are charged with (1) failing to set aside, protect or preserve the funds received by referees, trustees, receivers, custodians, and parties designated by this Court in various proceedings under the Bankruptcy Act; (2) failing to tender monthly or other periodic statements of each bankruptcy account on deposit within their banks and (3) failing to properly prepare and act in a qualified manner as a depository for bankruptcy funds in their possession. More specifically, Union National is charged with appropriating certain funds deposited in an agency account in its bank by Auctioneers, Inc., as designated auctioneer. in various bankruptcy causes, and applying these funds to a debt owed Union National by Auctioneers, Inc., when it knew or should have known that all or part of these appropriated funds were bankruptcy assets. Union National is also charged with unlawfully garnishing Auctioneers' account in Citizens Bank to satisfy Auctioneers' debt to Union National, when both depository banks knew or should have known that the seized funds were all or part of bankruptcy assets.

The Order to show cause why the banks should not be held in civil contempt was issued by Judge John W. Lord, Jr. on December 5, 1966. Approx-

imately nine years before the issuance of this Order, April 15, 1958, Judge Lord designated Union National as a lawful depository for bankruptcy funds.[1] On August 28, 1957, Citizens was duly designated as a depository bank by Order of the same Judge. It is these Orders that were allegedly violated when Auctioneers' funds were appropriated and garnished by Union National and the garnishment acceded to by Citizens.

Auctioneers, Inc. was an authorized auctioneer appointed by the Court to sell bankruptcy assets at auction in certain instances. In the course of its business, Auctioneers opened an agency account with Union National and subsequently opened another account with Citizens. The funds which Auctioneers received from all sources were intermixed into these accounts. On November 19, 1964, Union National entered judgment against Auctioneers for $20,000 for defaulting on a loan, in the Court of Common Pleas # 1 of Philadelphia County, September Term, 1964, No. 4106, and issued an attachment against Auctioneers' funds at Citizens. The latter honored this attachment upon advice of counsel and paid $8981.11 over to Union National. On December 22, 1964, Union National seized the funds in Auctioneers' agency account and applied them to a debt owing Union National by Auctioneers.

Upon the failure of Auctioneers to account to the respective trustees and receivers in bankruptcy for the moneys collected from the sale of various bankruptcy assets, Reliance was forced to pay the sum of $25,000 to its obligee, the United States of America, which was the amount of the bond Auctioneers had obtained from Reliance pursuant to Local Rule 7 of the Bankruptcy Rules for this Court. Reliance, therefore, in seeking to be indemnified upon its bond, instituted the contempt action at which the banks' motions to dismiss are directed. It has also instituted suit in this Court (Civil Action No. 39512) against Auctioneers for defaulting on the bond and its failure to indemnify Reliance as agreed.

■ Reliance, the petitioner herein, opposes the motions to dismiss because they were filed more than eighteen months after service of the pleadings. It contends that the motions to dismiss are untimely because Rule 12(a) of the Federal Rules of Civil Procedure provides that such a motion must be served within twenty days of the service of the pleadings and before a responsive pleading is served. However, Rule 12(h) (2), F.R.C.P. clearly provides that a motion to dismiss for failure to state a claim upon which relief must be granted can be made at any stage of permissible pleading, however late, and therefore is not within the time strictures of 12(a). The Court finds the banks' motions to be permissible and timely in this instance. McLaughlin v. Curtis Publishing Co., 5 F.R.D. 87 (S.D.N.Y.1943).

■ Citizens' motion to dismiss for lack of subject matter jurisdiction is also timely and permissible since such a motion can never be waived and can be interposed at any stage of the action. See Rule 12(h) (3) F.R.C.P.

### LACK OF SUBJECT MATTER JURISDICTION

Citizens contends that an alleged breach of a depository bank's duty under Section 61 of the Bankruptcy Act, 11 U.S.C. § 101 cannot be remedied by a civil

---

[1]. "AND NOW, this 15th day of April, A.D.1958, upon consideration of the within petition, the Court designates Union National Bank and Trust Company of Souderton to be one of the depositories under Section 61 of the Bankruptcy Act of 1938 as amended for moneys of bankrupt estates, including moneys of estates under Chapter X of the Bankruptcy Act, as amended, and it is

FURTHER ORDERED that the said depository shall at all times, give and maintain security to this Court in an amount sufficient to cover all moneys of bankrupt estates including moneys of estates under Chapter X of the Bankruptcy Act as amended, on deposit with or in its hands as such designated depository of each and every account in excess of $10,000.00."

contempt proceeding and therefore moves for dismissal for lack of subject matter jurisdiction. With this contention, the Court does not agree.

A sufficient basis for this Court's jurisdiction has been laid in Reliance's petition. Petitioner has alleged that a standing Order of this Court has been wilfully violated by the alleged contemnor banks. In stating that there is jurisdiction, I do so solely on the basis of petitioner's allegations in its pleadings without any regard to the merits of the claim. The Court's reason for doing so is that it must assume jurisdiction to decide whether the allegations state a claim under which it can grant relief. Stella v. Kaiser, 82 F.Supp. 301 (S.D.N.Y.1948).

■ Contempt proceedings for disobedience of a lawful order are specifically authorized by two distinct provisions in the Bankruptcy Act. Civil contempt is a remedy which the Court is authorized to use to "enforce obedience by persons to all lawful orders, by fine or imprisonment or fine and imprisonment." 11 U.S.C. § 11(a) (13), Maggio v. Zeitz, 333 U.S. 56, 67, 68 S.Ct. 401, 92 L.Ed. 476 (1947). The Court also has the jurisdiction to cause the estates of bankrupts to be collected, reduced to money, and distributed, *and determines controversies in relation thereto*, 11 U.S.C. § 11(a) (7) (emphasis supplied). The question before me encompasses both these jurisdictional points. A standing Order of this Court was allegedly violated when the depository banks appropriated and/or allowed to be garnished assets of bankruptcy estates which had been reduced to money by Auctioneers, Inc. Thus, the Court has jurisdiction under the Bankruptcy Act to determine if petitioner's allegations have merit.

The banks argue that funds deposited in depository banks are not in the registry of the Bankruptcy Court and therefore may not be collected in a summary proceeding such as the one now before

us. Matter of Bologh, 185 F. 825 (S.D.N.Y.1911). However, *Bologh* was concerned with the Bankruptcy Court's summary power over insolvent depository banks which, when exercised, might result in a preference over other preferred creditors under the statute. This is not the case here since both banks are solvent.

Although the question of whether these funds are in the registry of the Bankruptcy Court is a difficult one, cf. In re Realty Associates Securities Corporation, 98 F.2d 722 (2 Cir.1938), I find that this issue is not determinative of the Court's jurisdiction in this instance. At any rate, the banks' argument as premised in *Bologh* runs only to the remedy and not to jurisdiction. As stated before, the determinative nexus of jurisdiction has already been established in the petition, that nexus being an Order of the Bankruptcy Court and its alleged wilful violation.

■ Additionally, the Court is reluctant to dismiss this novel claim on the basis of lack of subject matter jurisdiction, since the merits of the case are so closely intertwined with the jurisdictional claim. In such cases, it has been held that where the issue of jurisdiction is dependent upon the merits, the Court should determine jurisdiction by proceeding to the merits. McBeath v. Inter-American Citizens for Decency Com., 374 F.2d 359 (5 Cir.1967).* This I shall do under the heading "FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED."

## FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

Both Citizens and Union National have filed motions to dismiss for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b) (6) F.R.C.P. The banks present this motion on the basis that the Bankruptcy Act, the General Orders thereunder, and the Local Rules in Bankruptcy of this Court,

* Cert. denied, 389 U.S. 896, 88 S.Ct. 216, 19 L.Ed.2d 214 (1967).

do not require auctioneers qualified to act in bankruptcy proceedings to deposit funds received by them in official depositories. Concomitantly, they argue that depository banks have no special duties or trust with respect to these funds.

A perusal by the Court of the above statutes, regulations and rules confirms the banks' conclusions as to the non-applicability of any bankruptcy standards to them in this case. Section 70(f) of the Bankruptcy Act (11 U.S.C. § 110) requires that the auctioneer be duly licensed in the place where the sale is conducted. Of the General Orders in Bankruptcy, Order 18 provides that the auctioneer, upon completion of the sale, shall file with the Bankruptcy Court, and the receiver or trustee, schedules, listing the property sold, the purchase, and the price received. Local Rule 7 of our Court requires that duly authorized auctioneers obtain a bond in the sum of $25,000 with good and sufficient surety and be posted as a blanket bond, or that an approved individual bond with surety be posted in each estate. The relation between depository banks and auctioneers is not mentioned and no duty to deposit funds of appointed auctioneers in depository banks is promulgated or implied in any of the above.

The fact that Auctioneers' proceeds from its bankruptcy sales were placed in depository banks was purely incidental. If placed in a non-depository bank and a set-off occurred, Reliance impliedly admits that it would have no claim in contempt because there would be no standing Order of this Court violated.

The crucial question still remaining is—does a standing Order of this Court allowing the alleged contemnor banks to serve as depositories activate a special duty of trust to the Bankruptcy Court as to funds received by Auctioneers, some of which were gained from the sale of bankruptcy assets? I think not.

Auctioneers, Inc. opened corporate checking accounts with the respective banks. The accounts were not impressed with any fiduciary designation and withdrawals from these accounts did not require any counter-signature of the Bankruptcy Court, cf. Order 29 of the General Orders in Bankruptcy. The banks, therefore, were under no extraordinary duty to protect, preserve, or segregate the funds of Auctioneers because these were not bankruptcy accounts. The duty of segregation and accounting rested solely on Auctioneers, who were agents of the Bankruptcy Court.

Reliance, in support of its rule to show cause, cites the case of Lamb v. Townshend, 71 F.2d 590 (4 Cir.1934), cert. denied, 293 U.S. 602, 55 S.Ct. 118, 79 L.Ed. 694 (1934), for the proposition that solvent banks which serve as depositories can be subject to the Bankruptcy Court's summary jurisdiction. Stated generally, this is true. However, in Lamb, the funds involved were deposited by a trustee in bankruptcy in a depository bank which subsequently became insolvent. The depository bank had specifically violated the standing Order of designation (see footnote 1) by accepting bankruptcy funds in excess of the amount of its covering bond. The trustee, therefore, was allowed to proceed summarily against the Receiver of the insolvent bank for bankruptcy funds in the bank receiver's possession. With this result, the Court has no quarrel, but I fail to see its relevance where the accounts of receivers or trustees in bankruptcy are not involved and where no Order of this Court has been specifically violated.

Neither the Court's own research nor Reliance's brief has turned up one case where duly authorized auctioneers are equated with trustees or receivers in bankruptcy as to duties and rights under the Bankruptcy Act. It necessarily follows that the relation between depository banks and auctioneers is similarly bereft of any legal connection in bankruptcy matters. The only protection the Bankruptcy Court has required concerning auctioneers is that they post bonds in an amount sufficient to cover any default which might occur. The Court

cannot impose additional duties upon depository banks without statutory or case law justification. None have been cited or found.

■ The Court finds, therefore, that the duties of depository banks to the Bankruptcy Court, as covered by the Order of designation, the Bankruptcy Act, and the orders and regulations promulgated thereunder, do not extend beyond the accounts of receivers or trustees in bankruptcy. In re Dialogue, 215 F. 462 (D.N.J.1914). Since under the agreed facts, no claim for relief has been stated, the banks' motion to dismiss must be granted. Petitioner's defect cannot be cured by amendment since no Order of this Court was violated and petitioner's claim is based upon such an Order.

Even assuming arguendo that the Order of designation signed by Judge Lord applies to Auctioneers' funds in the alleged contemnor banks, the petitioner has still failed to state a claim upon which relief may be granted. Civil contempt proceedings are usually instituted when depository banks fail to honor turn-over orders for funds in their possession which clearly belong to the bankruptcy estate. May v. Henderson, 268 U.S. 111, 45 S.Ct. 456, 69 L.Ed. 870 (1925); 2 Collier on Bankruptcy, Section 24.22 (14th ed. 1966), Annot., 92 L.Ed. 502. In such cases, the turn-over order is clear and specific and the noncompliance with that order is wilful and deliberate. If the property of the bankrupt is wrongfully withheld by any person, the trustee may seek an order for its delivery. Once the order is granted, the wilful non-compliance with that order is contempt. Carter v. Fleece, 288 F. 193 (6 Cir.1923).

■ The Orders of the Court designating these banks as depositories for moneys of bankrupt estates directed only that sufficient security be maintained to cover all money of bankrupt estates. The banks have admittedly complied with that direction. If the Court extends the scope and direction of the Order of designation to petitioner's requested breadth, I still am faced with the banks' good faith belief that the standing Order did not embrace the matter charged. Under such circumstances, it would be indeed hard to find that the violation of the Order was wilful and deliberate. Such a finding is a necessary requisite in civil contempt proceedings. When orders lack certainty as to what is prohibited or directed, it would be unreasonable to impose a contempt citation upon the transgressors. See In re Rubin, 378 F.2d 104 (3 Cir.1967). The proper procedure for determining ownership, possession or title to bankrupt property is in the form of summary or plenary proceedings, not contempt proceedings. In re Rubin, supra, at 109.

Under the facts as stated, the core of this dispute lies in the possession or ownership of Auctioneers' accounts. Contempt proceedings are not available to the petitioner. The Court's decision to dismiss does not reach the merits of whether the banks unlawfully appropriated money or allowed money to be garnished from their account, when they knew, in fact, that all or part were funds of bankruptcy estates. All the Court is saying is that as a matter of law, the contempt power of this Court cannot be utilized in this case because the Order on which it rests does not apply to the facts before me.

Therefore, the banks' motions to dismiss, pursuant to Rule 12(b) (6) F.R.C. P., are granted, without prejudice to petitioner's right to attempt in other proceedings to recover its loss and it is so ordered.