## In re POTELL.
### No. 19506.

District Court, E. D. New York.
Jan. 30, 1931.

Herman G. Robbins, of Brooklyn, N. Y., for receiver.

Carl J. Austrian, of New York City, for State Superintendent of Banks and Bank of United States.

INCH, District Judge.

This is the return of an order to show cause why an order should not be made directing the Bank of United States and Joseph A. Broderick, superintendent of banks of the state of New York, to pay Edward G. Elkins, as a receiver in bankruptcy, the sum of $272.75.

All parties are duly before the court. The question raised is important, regardless of the comparatively small sum of money involved.

The undisputed facts presented by the motion papers are that on October 16, 1930, Joseph Potell duly filed in this court his voluntary petition to be adjudicated a bankrupt, and was thereupon duly adjudicated. That shortly thereafter Edward G. Elkins was duly appointed receiver of the said bankrupt's estate, and Elkins duly qualified and took possession thereof. That among the assets was the sum of $320.75. That on November 5, 1930, said receiver went to the Bank of United States, at its branch at Eastern parkway and Kingston avenue, Brooklyn, and, after a conversation with one of the officers of said bank, deposited the above sum in the Bank of United States. That thereafter several small checks were drawn by the receiver on said account aggregating the sum of $48, which checks were inadvertently countersigned by the clerk of this court and duly paid by the bank, and there now remains in said receiver's account, and to the credit of said bankrupt estate in said bank, the sum of $272.75. That on December 4, 1930, the Bank of United States having failed, Joseph A. Broderick, superintendent of banks of the state of New York, duly took possession of all the assets and affairs of said bank, pursuant to the law of the state of New York. That the said receiver in bankruptcy thereupon made a demand for the repayment to him as such receiver of this sum so remaining in said receiver's account, to the credit of said bankrupt estate. This demand was refused, whereupon this motion is made.

There has been no trustee of the bankrupt estate appointed or elected.

The Bank of United States is a domestic banking corporation duly subject to the banking laws of the state of New York. The said superintendent of banks is in sole charge of the affairs of said institution subject in all respects to the orders of the Supreme Court of the state of New York in accordance with the laws of that state.

On the other hand, the Bank of United States was not before nor at the time of the deposit of the money by the said receiver and opening of said receiver's account above mentioned, nor thereafter did it become, a duly designated depository of this court.

The first question therefore is, Has this court of bankruptcy jurisdiction to direct by summary motion, the return by the depositary of an unauthorized deposit by a receiver in bankruptcy of money of the bankrupt estate deposited by him as such officer and received by the depositary contrary to the law of the United States and the rules of this court? The second question is, If such jurisdiction exists, should or can it be exercised when the affairs of said depositary are in the control of the superintendent of banks of the state of New York?

There is no dispute as to the facts.

The manner in which the receiver says he was persuaded to open the account is immaterial here, as is also the fact that, due to the large amount of similar business done each day, certain small checks appear to have been carelessly countersigned by the clerk of this court. Nor is it important that, prior to the time of the opening of said account, the Bank of United States had applied for an order designating it as one of the official depositories of this court, and an order had been made so designating it conditional, however, upon the filing by it of the usual bond required, which bond was neither presented nor filed. Nor is it material that this particular branch bank of the Bank of United States had a considerable time previous, and while it had existed as an independent bank, been at one time a designated depository of this court, for, when such bank was absorbed by and became a part of the Bank of United States, it had entirely ceased to become such designated depository, and the order previously designating it had in all respects been terminated and become ineffective; a fact which was or should have been well known to those in control of the Bank of United States and evidenced by their new application above mentioned.

Accordingly this motion is decided upon the conceded facts that the Bank of United States was not at the time of the opening of the receiver's account a duly designated depository of this court, and that the money

of the estate placed in its possession by the receiver in bankruptcy was placed there and received by it unlawfully and contrary to the rules of this court.

██ While no special appearance by bank or superintendent is indicated, it is necessary for the court itself to consider such question of preliminary jurisdiction. Regardless of its subsequent decision it has jurisdiction to determine whether it shall consider a motion for a summary order. Harrison, Trustee, v. Chamberlin, 271 U. S. 191, 46 S. Ct. 467, 70 L. Ed. 897.

The money involved here represents assets of a bankrupt estate which came into possession of a receiver in bankruptcy after the filing of a petition and an adjudication of the bankrupt. The law and the rules of this court specifically provide where such money must be deposited by said receiver and the manner in which it may be withdrawn.

The Bankruptcy Act of July 1, 1898 as amended provides (section 61): "(61). *Depositories for Money.* Courts of bankruptcy shall designate, by order, banking institutions as depositories for the money of bankrupt estates, as convenient as may be to the residences of trustees, and shall require bonds to the United States, subject to their approval, to be given by such banking institutions, and may from time to time as occasion may require, by like order increase the number of depositories or the amount of any bond or change such depositories" (Title 11, section 101, U. S. Code [11 USCA § 101]).

The General Orders in Bankruptcy, which have the force of law, provide:

"XXIX. *Payment of Moneys Deposited.* No moneys deposited as required by the act shall be drawn from the depository unless by check or warrant, signed by the clerk of the court, or by a trustee, and countersigned by the judge of the court, or by a referee designated for that purpose, or by the clerk or his assistant under an order made by the judge, stating the date, the sum, and the account for which it is drawn; and an entry of the substance of such check or warrant, with the date thereof, the sum drawn for, and the account for which it is drawn, shall be forthwith made in a book kept for that purpose by the trustee or his clerk; and all checks and drafts shall be entered in the order of time in which they are drawn, and shall be numbered in the case of each estate. A copy of this general order shall be furnished to the depository, and also the name of any referee or clerk authorized to countersign said checks" (11 USCA § 53).

These provisions are mandatory in form. Collier on Bankruptcy, vol. 1, page 1341 and cases cited; Remington on Bankruptcy, vol. 2, § 1129, cases cited.

The Bankruptcy Rules of this court provide:

"31. *Depositories.*

"Banking institutions as depositories for moneys of the bankrupt estates shall be designated by orders entered for that purpose, and the Clerk shall keep a list of authorized depositories open to the inspection of the public."

██ That Congress considered these provisions essential to the proper and safe custody of the funds of a bankrupt estate is evident not only from the law as expressed, but from the nature of the deposits. The effect thereof is certainly to "prohibit" the depositing and reception of such funds in and by unauthorized depositories. It would not seem necessary to make it also a crime as provided in cases of "public money." Criminal Code, §§ 89–96, title 18, USCA §§ 175–182.

It is plain therefore that the said receiver in bankruptcy had no right to deposit money of the bankrupt estate contrary to the above provisions of the laws and rules. That whether or not a bank was a designated depository was easily ascertained and a public record. That the officers of the bank knew or should have known that it was not a designated depository. They knew or should have known that they had not even presented nor had filed the bond without which no designation would be made.

██ Thus we come to the question: In whom was the title to this money so unlawfully deposited? The title was not in the bankrupt, for he had been duly adjudicated. It was concededly a part of the bankrupt estate applicable to the payment of creditors. It was not in the receiver of bankruptcy, for he is a mere custodian of such estate. There was no trustee and is none today. This money, pending the presence of a qualified trustee, was in the custody of the court. Hanover Nat. Bank v. Moyses, 186 U. S. 181, 22 S. Ct. 857, 46 L. Ed. 113; Acme Harvester Co. v. Beckman Lumber Co., 222 U. S. 300, 32 S. Ct. 96, 56 L. Ed. 208; Cameron v. United States, 231 U. S. 710, 34 S. Ct. 244, 58 L. Ed. 448; Lazarus, Michel & Lazarus v. Prentice, 234 U. S. 263, 34 S. Ct. 851, 58 L. Ed. 1305.

██ Such funds in the temporary possession of a receiver in bankruptcy are held by him in trust as such custodian, and a bank un-

lawfully receiving such money with full knowledge of the peculiar character of the deposit and in opening a prohibited account with such receiver received it impressed with such trust. The principle in Allen v. United States, 285 F. 678 (C. C. A. 1st) seems applicable.

The question of summary jurisdiction has been very recently decided by the Circuit Court of Appeals of this circuit, in Re Times Square Auto Supply Co., Inc., 47 F.(2d) 210, 212.

■ In this Times Square Case, a trustee in bankruptcy instituted a summary proceeding to compel the Bank of United States to pay over a sum of money. It appeared and was conceded that, before the filing of the petition in bankruptcy, the Colonial Bank was a creditor of the bankrupt to the extent of an overdraft, and that thereafter, with knowledge of the pending petition in bankruptcy, it obtained by means of checks possession of money belonging to the bankrupt's estate which it proceeded to retain in an attempt to pay the overdraft, in spite of the protest and demand of the trustee. The said Colonial Bank was absorbed by the Bank of United States which succeeded to the assets and the liabilities of the Colonial Bank, and the court says: "If the Colonial Bank is bound to account for this money, so likewise is the appellee [Bank of United States], since it has assumed the liabilities of the Colonial Bank."

The court below denied the motion of the trustee for summary relief, and on appeal this was reversed by the Circuit Court of Appeals, the court expressly stating: "Under no tenable theory can property in custodia legis be taken by a creditor having knowledge of the pending petition to satisfy a pre-existing debt of the bankrupt."

One of the points decided in the above case was whether the court had jurisdiction to proceed summarily. The facts being conceded, the court held that it could so proceed.

If therefore the sole party contending against this application of the receiver was the Bank of United States, the unlawful depository, it seems to me that this court, having the funds in custodia legis and on conceded facts, could proceed by summary order to direct its officer, the receiver, to withdraw such funds immediately and place them in a lawful depository, and that the bank be directed to allow this to be done.

Surely this must be so, for if such money could not be so taken out, the clerk of this court could not countersign any checks upon such account, and the money would thus be left in this condition to the possible great detriment of the estate.

Accordingly, I find that this court has jurisdiction to proceed by summary order under such conditions.

This brings us to the second question. The superintendent of banks apparently contends that, because of the failure of the Bank of United States and his due taking possession of all its assets and affairs, this court has lost jurisdiction to grant such summary relief, and that such matter is now entirely a matter to be adjusted by the Supreme Court of the state, and that the bankruptcy receiver "should be remitted to the orderly procedure specifically provided in sections 72 to 78 inclusive of the Banking Law of the State of New York [Consol. Laws N. Y., c. 2]." The counsel for the Superintendent cites as his sole authority for this contention: In re Bologh et al. (D. C.) 185 F. 825 (opinion of the late Judge Holt, D. J.).

■ While jurisdiction should be distinguished from the exercise of jurisdiction, complete jurisdiction includes not only the power to hear and determine but the power to enforce the determination. 15 Corpus Juris, § 19, page 728, and cases cited.

As has been said: "Comity between federal and state courts is necessary to prevent scandal from unseemly conflicts of jurisdiction and to promote a decent and orderly administration of justice." 15 Corpus Juris, § 636, page 1160; Covell v. Heyman, 111 U. S. 176, 4 S. Ct. 355, 28 L. Ed. 390.

■ However, this is an application by a receiver in bankruptcy in regard to money in custodia legis. The jurisdiction of the federal court in bankruptcy is exclusive in the administration of affairs of a bankrupt. Virginia Iron, Coal & Coke Co. v. Olcott (C. C. A.) 197 F. 730; U. S. Fidelity & Guaranty Co. v. Bray, 225 U. S. 205, page 218, 32 S. Ct. 620, 56 L. Ed. 1055.

The statement of Mr. Justice Peckham, delivering the opinion of the Supreme Court, in the case of Willcox v. Consolidated Gas Co., 212 U. S. 19, at page 40, 29 S. Ct. 192, 195, 53 L. Ed. 382, 48 L. R. A. (N. S.) 1134, 15 Ann. Cas. 1034, is in point, under circumstances of exclusive jurisdiction: "They assume to criticize that court [federal court] for taking jurisdiction of this case, as precipitate, as if it were a question of discretion or comity, whether or not that court should have heard the case. On the contrary,

there was no discretion or comity about it. When a Federal court is properly appealed to in a case over which it has by law jurisdiction, it is its duty to take such jurisdiction (Cohens v. Virginia, 6 Wheat. 264, 404, 5 L. Ed. 257, 291), and, in taking it, that court cannot be truthfully spoken of as precipitate in its conduct. That the case may be one of local interest only is entirely immaterial, so long as the parties are citizens of different states or a question is involved which, by law, brings the case within the jurisdiction of a Federal court."

To be sure it has been held properly that: "A court which has the actual custody and possession of property to which another court of concurrent jurisdiction has prior and superior right may lawfully retain the property until the latter court, through its proper officer, requests and offers to receive the actual possession and custody." Boatmen's Bank v. Fritzlen, 135 F. 650, 651 (C. C. 8th).

Turning now to the sole authority apparently relied on by the superintendent of banks, In re Bologh, supra, it seems to me that the very careful and learned opinion of Judge Holt expressly distinguishes that case from the facts presented on this motion. The depository, in the Bologh Case, was a lawfully duly designated depository, with a bond duly filed. It was held by Judge Holt that, "where a receiver or other officer of a court of bankruptcy deposits money in a *designated depositary,* the same relation of debtor and creditor is created as in the case of an ordinary bank deposit, so that *the bankruptcy court no longer has the same jurisdiction over it as it has over funds or property in the possession of a receiver or trustee."* (Italics mine).

Without questioning the correctness of such decision on the facts there presented, such facts are far different from the facts here presented. Here both the bank and the receiver were acting unlawfully, with full knowledge of the bankruptcy petition and of the law applicable to such deposits. It was not a case such as existed in the Carnegie Trust Company matter.

In the case before me, the bank did not become a lawful debtor but an unlawful holder of the money.

The highest court of this circuit has not hesitated to proceed summarily against a bank which had taken possession of property in custodia legis. In re Times Square Auto Supply Co., Inc., supra.

The duties of the superintendent of banks as set forth in the Banking Law of the state (Laws of 1914, c. 369, as amended, Book 4 McKinney's Consolidated Laws of New York, Annotated) requires application to the Supreme Court of the state of New York for the payment of moneys, claims, etc., and, in that sense, the ascertainment of priorities, etc., are exclusively in the hands of the Supreme Court of the state, and the superintendent is without authority, in the absence of proper orders, to comply with a demand for payment of claims. Orderly procedure does require him to present all such matters to the state court.

However, it does not seem to me that a state law or his mere appointment and taking possession ousts this court of its exclusive jurisdiction, and can prevent this court from duly deciding that this bankruptcy fund in question was unlawfully deposited and unlawfully accepted, and should be returned intact to this court from whose possession it was so taken, provided the assets of the unlawful depository are sufficient to do so. That on the contrary he should present such finding to the Supreme Court of the state in accordance with orderly procedure, and request said court to direct its repayment by him in full.

This seems to me to go as far as comity and the mutual and proper regard by courts for the decisions of each other can and should require.

Accordingly, the motion is granted. However the execution of the order to be entered thereon is stayed pending a proper application by the superintendent of banks to the state court for an order complying with this decision or in case an appeal is desired, pending such appeal.