534 F.2d 532
 18 UCC Rep.Serv. 1228
 In the Matter of QUANTUM DEVELOPMENT CORP., Debtor.
AMERICAN FIDELITY FIRE INSURANCE CO.
v.
Charles JOY, Receiver, and Charles Tait, Temporary Receiver,
First National City Bank.
Albert C. LANG, Trustee and American Fidelity Fire Insurance Company
v.
The BANK OF NOVA SCOTIA, Appellant in No. 75-2050.
Appeal of FIRST NATIONAL CITY BANK, in No. 75-2051.
 Nos. 75-2050, 75-2051.
 United States Court of Appeals,
Third Circuit.
 Argued Dec. 5, 1975.
Decided March 24, 1976.
 
 Leo H. Hirsch, Jr., New York City, for appellee American Fidelity Fire Insurance Co.; William T. Holmes, Christiansted, St. Croix, V.I., of counsel.
 Isherwood, Colianni, Alkon & Barnard, Christiansted, St. Croix, V.I., for appellant The Bank of Nova Scotia; James H. Isherwood, Geoffrey W. Barnard, Christiansted, St. Croix, V.I., of counsel.
 Shearman & Sterling, New York City, Loud & Campbell, Charlotte Amalie, St. Thomas, V.I., for appellant First National City Bank; Matthew C. Gruskin, New York City, Roger L. Campbell, Charlotte Amalie, St. Thomas, V.I., of counsel.
 Before ALDISERT, WEIS and GARTH, Circuit Judges.
 GARTH, Circuit Judge.
 
 
 1
 We are called upon to determine the liability of banking institutions which were not designated as official bankruptcy depositories under the Bankruptcy Act but which nevertheless accepted deposits of bankruptcy funds that were subsequently embezzled. We affirm the district court's order which held both banks liable to the bankrupt's surety even though we do so on a theory different than that adopted by the district court.
 
 I.
 
 2
 These appeals arise from litigation caused by the bankruptcy of Quantum Development Corporation in the Virgin Islands. Quantum had entered into a contract in December, 1971 to construct the Croixville Project, a low-cost multiple housing unit development. Prior to the completion of the project, Quantum became insolvent and defaulted under its contract. Plaintiff-appellee American Fidelity Fire Insurance Company (Fidelity), a surety under a payment and performance bond for Quantum, completed the Croixville Project. As a result of its expenditures and performance under the surety bond, Fidelity asserted claims by way of subrogation to funds of the Quantum estate then under the jurisdiction of the bankruptcy court.[1]
 
 Bank of Nova Scotia (BNS)
 
 3
 Fidelity initially sought to recover $84,858 which the district court had ordered it to deposit in the Quantum estate on March 21, 1973. Pursuant to the court's order, Fidelity delivered to the district court clerk a certified check in the amount of $84,858 payable to the order of "Charles R. Joy, Receiver." Joy was the duly appointed receiver of Quantum under Chapter XI of the Bankruptcy Act.
 
 
 4
 The bankruptcy referee had instructed Joy to purchase certificates of deposit at the highest rate of interest available with the major portion of the Quantum funds and to place the balance in a checking account. Joy endorsed the Fidelity check which was payable to the order of "Charles R. Joy, Receiver" as follows:
 
 
 5
 For Deposit in Quantum Acct.
 
 Quantum Bankruptcy, Charles R. Joy
 
 6
 On April 2, 1973 Joy presented this check to the Christiansted branch of the Bank of Nova Scotia (BNS) and used $75,000 of the proceeds to purchase three certificates of deposit.[2] He left the balance of the funds on deposit in a checking account at BNS. BNS was not a designated depository for bankruptcy funds under Section 61 of the Bankruptcy Act. Joy requested, and BNS issued, the certificates of deposit to "Charles R. Joy", without any reference to, or designation of, his representative capacity.
 
 
 7
 On October 2, 1973, when the certificates of deposit matured, BNS issued to "Mr. Charles R. Joy" a check for $77,664.54, representing the principal sum of $75,000 plus interest of $2,664.54. Joy embezzled the proceeds of this check. As a result, Fidelity commenced this suit against BNS to recover the $77,664.54.[3]
 
 First National City Bank (Citibank)
 
 8
 Fidelity also sought to recover the Croixville Project retainages totalling $115,211. The district court's order of April 13, 1973 directed Behrens Mortgage Company to pay this retainage sum to Joy. A check was issued in the amount of $115,211 made payable to the order of
 
 Charles R. Joy, Receiver Quantum
 Development Corporation VI No. 5-1972
 
 9
 In Bankruptcy Pursuant to Court Order of April 13, 1973.
 
 Joy endorsed the check
 Charles Joy, Receiver
 
 10
 Quantum Corp.
 
 
 11
 On September 10, 1973 Joy presented this check to the Christiansted branch of First National City Bank (Citibank) and used the entire proceeds to purchase a certificate of deposit. Citibank was not a designated depository for bankruptcy funds under Section 61 of the Bankruptcy Act. The application for the certificate of deposit was prepared in the name of "Charles R. Joy, Receiver," but the certificate was made payable to "Charles R. Joy", without any designation of his representative capacity.
 
 
 12
 The certificate matured on November 12, 1973. On November 19, 1973, Joy informed Citibank that he did not wish the certificate renewed. Instead he instructed Citibank to cable the principal and interest, totalling $117,571.51, to the City National Bank of Miami, payable to himself. Thereafter, Joy absconded with the $117,571.51.
 
 
 13
 Fidelity initially commenced suit against Joy as receiver of Quantum. After Joy embezzled the funds, Fidelity filed a supplemental complaint against Citibank to recover the $117,571.51 taken by Joy from the Quantum estate.
 
 II.
 
 14
 After trial the District Court for the Virgin Islands, sitting in bankruptcy,[4] held BNS liable to Fidelity in the amount of $77,664.54 plus interest and held Citibank liable to Fidelity in the amount of $117,571.51 plus interest. In so holding the district court rejected Fidelity's argument that a bank which accepts bankruptcy funds but has not been designated as a depository under the Bankruptcy Act becomes a trustee ex maleficio to the extent of such funds and is liable without more for all subsequent misappropriations. Rather, the district court predicated the banks' liability on their failure to comply with the restrictive endorsements on the checks. In re Quantum Development Corp., 397 F.Supp. 329 (D.V.I.1975).
 
 
 15
 At BNS Joy had presented a check payable to his order as receiver and endorsed by Joy
 
 
 16
 For Deposit in Quantum Acct.
 
 
 17
 Quantum Bankruptcy Charles R. Joy.
 
 
 18
 Although this check was restrictively endorsed,[5] BNS issued certificates of deposit in the individual name of "Charles R. Joy", with no reference to Joy's representative capacity as receiver.
 
 
 19
 At Citibank, Joy had presented a check payable to the order of
 
 Charles R. Joy, Receiver Quantum
 Development Corporation VI No. 5-1972
 
 20
 In Bankruptcy Pursuant to Court Order of April 13, 1973.
 
 
 21
 which was restrictively endorsed "Charles Joy Receiver Quantum Corp." However, Citibank issued a certificate of deposit payable to "Charles R. Joy" as payee.
 
 
 22
 The district court, relying on Virgin Islands law, 11A V.I.C. § 3-419(4),[6] and decisional law,[7] concluded that each bank was liable for failing to apply the proceeds of each check consistently with the restrictive endorsements.
 
 
 23
 Defendants-appellants BNS and Citibank timely appealed from the district court's order of July 24, 1975[8] adjudging them liable to Fidelity for $77,664.54 plus interest and $117,571.51 plus interest respectively. This Court has jurisdiction pursuant to 28 U.S.C. § 1291.III.
 
 
 24
 Since the enactment of the Bankruptcy Act of 1898, Congress has imposed special requirements upon financial institutions selected to receive bankruptcy funds for deposit. While Quantum was in Chapter XI proceedings,[9] Section 47(a)(2) of the Bankruptcy Act, 11 U.S.C. § 75(a)(2),[10] required that trustees and receivers "deposit all money received by them in designated depositories . .. ." The complement to this requirement was found in Section 61 of the Act, 11 U.S.C. § 101,[11] which required that the bankruptcy court designate by order those banking institutions authorized as depositories for the deposit of estate funds. Each depository designated by order was required to provide "a good and sufficient bond with surety, to secure the prompt repayment of the deposit." At the particular times that Joy deposited the Quantum checks in BNS and Citibank, the bonds required under Section 61 were to substantially provide that
 
 
 25
 . . . the banking institution, so designated, shall well and truly account for and pay over all moneys deposited with it as such depository, and shall pay out such moneys only as provided by the Act and applicable general orders and court rules, and shall abide by all orders of the court in respect of such moneys, and shall otherwise faithfully perform all duties pertaining to it as such depository . . ..
 
 
 26
 General Orders in Bankruptcy No. 53. Federal law thus mandated: (1) that only banks which were designated by court order and which furnished the requisite bond could receive bankruptcy funds for deposit; and (2) that receivers were prohibited from depositing estate funds in other than such designated institutions.
 
 
 27
 It is undisputed that neither BNS nor Citibank were designated as depositories for bankruptcy funds. Fidelity argues here, on the authority of American Surety Co. v. First National Bank, 141 F.2d 411 (4th Cir.), cert. denied, 322 U.S. 754, 65 S.Ct. 1267, 88 L.Ed. 1583 (1944), that the acceptance of the Quantum bankruptcy funds by BNS and Citibank without a court order designating them as official depositories under the Bankruptcy Act resulted in both banks becoming trustees ex maleficio of the funds which were subsequently misappropriated by Joy. Not surprisingly, BNS and Citibank dispute the applicability of American Surety, asserting that the mere failure to be designated as an official depository should not result in liability.
 
 IV.
 
 28
 The issue thus framed by these opposing contentions is whether the mere acceptance of bankruptcy fund deposits by a bank which has not been court designated as an official depository imposes liability upon the bank for all subsequent misappropriations of the funds. Although the Bankruptcy Act does not by its terms impose liability upon the offending bank in such a situation, we conclude that liability is mandated to effectuate the Act's overall policy which is to safeguard estate funds for creditors. In re Potell, 53 F.2d 877, 879 (E.D.N.Y.1931). In reaching this conclusion we emphasize that we are not concerned here with the liability, if any, arising from improper disbursements made by fiduciaries from estate accounts maintained in and by officially designated depositories. This latter situation, which is to be distinguished from ours, involves different policy considerations. See Uniform Fiduciaries Act, 15 V.I.C. § 1049 (1964). The liability of such banks which are officially designated depositories may depend upon participation in, or knowledge of, the fiduciary's illegal activities. Here, however, where the banks accepted bankruptcy funds without court designation, we impose absolute liability solely because of the acceptance of such funds in violation of the Bankruptcy Act.
 
 
 29
 We recognize that the situation which our case presents has occurred infrequently over the years. As a result there is little in the way of precedent to furnish us guidance. Nevertheless, even the few authorities that have spoken to this and related subjects have for the most part concluded, as have we, that liability should be visited upon the nondesignated bank at the time of, and solely as a result of, the acceptance of funds that could only be legally deposited in an officially designated institution. These cases emphasize that liability attaches at the time of acceptance of the deposit because it is at that time that the bank, on notice that the funds could only be legally deposited in a designated institution, nevertheless accepts the deposit proffered by a fiduciary acting in violation of law.
 
 
 30
 This concept of liability first appeared in contexts different than the one which concerns us, but which are nevertheless analogous in principle. Two general categories of cases discuss the liability of nondesignated depositories: (1) those in which deposits of public funds are made by public officers;[12] and (2) those in which deposits of bankruptcy funds are involved.[13]
 
 
 31
 In the "public fund-public officer" cases, either a statute or ordinance explicitly prohibited a public officer or fiduciary from depositing trust funds in other than an officially designated or authorized depository. In each instance, the deposit was made in a nondesignated bank which subsequently failed. In each case, the bank was held chargeable with notice of the statute that required the deposit of funds in a designated institution. Despite the competing equities of the general depositors and creditors of the insolvent bank, in each instance, the bank was held liable as a trustee to the public for all the public funds deposited.
 
 
 32
 This same theory of liability has been applied to banks which accepted the deposit of bankruptcy funds without having been designated as official depositories under Section 61 of the Bankruptcy Act. In In re Potell, supra, the receiver of an adjudicated bankrupt (Potell) opened an account for the estate in a nondesignated bank. Thereafter the bank became insolvent. The receiver sought to hold the bank liable for the entire account of the bankrupt estate in preference to the claims of the bank's creditors and depositors.
 
 
 33
 The district court focused upon the receiver's deposit, and the bank's acceptance, of bankruptcy funds in violation of the Bankruptcy Act. The court stated:
 
 
 34
 It is plain therefore that the said receiver in bankruptcy had no right to deposit money of the bankrupt estate contrary to the above provisions of the laws and rules. That whether or not a bank was a designated depository was easily ascertained and a public record. That the officers of the bank knew or should have known that it was not a designated depository. They knew or should have known that they had not even presented nor had filed the bond without which no designation would be made.
 
 
 35
 53 F.2d at 879. Therefore, in receiving the money "with full knowledge of the peculiar character of the deposit and in opening a prohibited account," the bank accepted the funds "impressed with . . . (a) trust." Id. at 880.[14] In subordinating the equities of the bank's creditors to the claim of the bankrupt Potell estate, the district court ordered the same remedy applied as had been utilized in the public fund-public officer cases a return of the bankruptcy funds in full to the receiver.[15]
 
 
 36
 The most recent expression of this rule of liability is to be found in the case most nearly analogous to our own, American Surety Co. v. First National Bank, 141 F.2d 411 (4th Cir.), cert. denied, 322 U.S. 754, 64 S.Ct. 1267, 188 L.Ed. 1583 (1944).[16] Unlike the cases previously discussed, American Surety involved a suit against a bank to recover funds of a bankrupt estate misappropriated by the trustee. The bank which was not a designated depository under the Bankruptcy Act accepted deposits of checks drawn to the order of the trustee in bankruptcy and endorsed by him as trustee in bankruptcy. Thereafter, the trustee withdrew the funds of the estate for his personal purposes.
 
 
 37
 The court held that the bank's receipt of bankruptcy funds without having been designated as an official depository rendered it liable for the funds subsequently misappropriated by the trustee. In reaching this determination the court found the applicable rule to be that stated in the Restatement of Trusts § 324, comment b (1935):[17]
 
 
 38
 If a trustee commits a breach of trust in depositing trust funds in a bank and the bank when it receives the funds has notice of the breach of trust, the bank is liable for participation in the breach of trust, and is chargeable as a constructive trustee of the funds.
 
 
 39
 Thus, if a bank receives on deposit funds which it knows are trust funds and which it knows that the trustee is forbidden by the terms of the trust to deposit in the bank, it is liable for participation in the breach of trust, and is chargeable as a constructive trustee of the funds deposited.
 
 
 40
 141 F.2d at 413.
 
 
 41
 There was little doubt that the trustee's deposit of bankruptcy funds in a nondesignated bank in violation of Sections 47 and 61 of the Bankruptcy Act (see notes 10, 11, supra ) constituted a breach of trust. The court emphasized:
 
 
 42
 It is perfectly clear that the purpose of these provisions (Sections 47 and 61) was to protect the funds of bankrupt estates, not merely to designate banks in which trustees might deposit funds without incurring personal liability, and that their effect was to forbid the deposit of bankruptcy funds in a bank which is not a designated depository . . . .
 
 
 43
 Id.
 
 Furthermore, the court found that
 
 44
 (t)he bank took the deposit of bankruptcy funds not merely with notice, but with notice so full as to leave no doubt that there was actual knowledge on the part of the bank's officers of the breach of trust of which the trustee was guilty in making the deposit. The checks were payable to the trustee as "trustee in bankruptcy of Eli Nutter" and were so endorsed. The fact that they covered funds belonging to the bankrupt estate was thus not a mere matter of notation on the checks which the bank was without obligation to notice, but was incorporated as a limitation upon the right of the trustee to receive payment, of which the bank was bound to take notice in accepting the checks. The rule is established by the great weight of authority that "where there are words indicating a representative or fiduciary character following the name of a payee, indorser, or indorsee on commercial paper deposited in a bank, the bank is chargeable with notice of the trust character of the instrument." (Citations omitted.)
 
 
 45
 Id. at 413-14. Certainly the payment orders and the endorsements on the checks put the bank on notice that it was accepting bankruptcy funds. But it is unclear on what basis the court resolved that the bank had notice of the trustee's breach of trust. The opinion does indicate that the bank cashier had actual knowledge "of the restrictions applicable to the deposit of bankruptcy funds." Id. at 414. However, the court relied on the public fund-public officer cases in which knowledge of the statute that made the public officer's deposit unlawful was imputed to the bank. In fact, the court concluded:
 
 
 46
 No different principle (than that applied in the public fund-public officer cases) is applicable, we think, with respect to the deposit of bankruptcy funds. It is true, as argued, that such funds are private and not public funds; but this is a distinction without a difference. The controlling consideration is that, just as in the case of public funds, the law requires deposit in a designated depository, that deposit elsewhere is without legal authority and that a bank receiving the deposit with notice of its trust character must hold it subject to the trust or respond in damages for failure to do so.
 
 
 47
 Id.
 
 
 48
 Since the requirements of Section 324, comment b of the Restatement of Trusts were satisfied, the court in American Surety held
 
 
 49
 . . . that the deposit itself constituted a breach of trust on the part of the trustee of which the bank had ample notice, and that, upon the receipt of the deposit under such circumstances, the bank became a trustee ex maleficio of the amount so received and liable therefor as a trustee to the estate of the bankrupt.
 
 
 50
 Id. at 413. Thus, the bank was liable to the extent of the bankruptcy funds deposited and thereafter misappropriated by the trustee.
 
 
 51
 Only the Minnesota Supreme Court in Rodgers v. Bankers' National Bank, 179 Minn. 197, 229 N.W. 90 (1930), has reached a result in a similar context different than that reached in American Surety. In Rodgers the Minnesota court held that the Bankruptcy Act was not intended to impose liability upon a nondesignated bank that accepts bankruptcy funds which are subsequently misappropriated. We agree with the Fourth Circuit's conclusion in American Surety that the Rodgers analysis should be rejected. Adherence to Rodgers would thwart rather than effectuate the policy of the Bankruptcy Act. Only the rule of liability applied in American Surety serves to protect bankrupt estates from loss. We therefore reject the Rodgers decision and the reasoning upon which it is predicated.
 
 
 52
 As in American Surety, we apply the rule of liability set forth by the Restatements (First and Second) of Trusts § 324, comment b (1935, 1957) to the situation before us. See p. --- and note 17, supra. Under this rule, as applied to the circumstances here, a bank is chargeable as a constructive trustee of bankruptcy fund deposits made by a receiver (1) if the receiver committed a breach of trust in making the deposit; and (2) if the bank accepted the deposits with notice of the breach of trust.
 
 
 53
 It is conceded that neither BNS nor Citibank were designated depositories for bankruptcy funds under Section 61 of the Bankruptcy Act. Thus, Joy, as receiver of Quantum, violated Section 47 of the Bankruptcy Act (see note 10, supra ) by depositing bankruptcy funds in nondesignated banks.
 
 
 54
 Furthermore, both BNS and Citibank accepted these funds with notice of Joy's breach of trust. The deposit of checks payable to the order of Joy as receiver of Quantum, and endorsed by Joy in his representative capacity, constituted notice to the banks that they were accepting bankruptcy funds. American Surety, supra at 413-14. From this notice as to the nature of the funds, it follows that the banks accepted these moneys for deposit with notice of Joy's breach of trust. Unlike the situation in American Surety, where the bank cashier apparently had knowledge (albeit erroneous knowledge) of the requirements of the Bankruptcy Act, it is clear from the testimony of the BNS and Citibank employees that they had no such knowledge. Nevertheless, we conclude that both banks are chargeable with knowledge of Sections 47 and 61 of the Bankruptcy Act and with notice of Joy's breach of trust.
 
 
 55
 In charging the banks with knowledge of the Act's provisions respecting the deposit of bankruptcy funds, we do no more than impose the same standard adopted by the courts in the public fund-public officer cases. See note 12, supra. Those courts imputed knowledge to the banks of the statutes or ordinances that prohibited the deposit of public funds in other than an official depository. Moreover, our conclusion merely represents an application in the bankruptcy context of the fundamental principle that "everyone is charged with knowledge of the United States Statutes at Large . . . ." Federal Crop Ins. Corp. v. Merrill, 332 U.S. 380, 384, 68 S.Ct. 1, 3, 92 L.Ed. 10, 15 (1947); Cole v. Railroad Retirement Board, 289 F.2d 65, 68 (8th Cir. 1961). Large commercial banks such as BNS and Citibank, which stand to profit from the deposit of bankruptcy funds, cannot claim ignorance of at least those provisions of the Bankruptcy Act which are relevant to their operations. To allow major financial institutions to accept deposits of bankruptcy funds oblivious to the designation and bond requirements of the Act would dangerously undermine the safeguards created by Congress for the creditors of bankrupt estates. This we refuse to do.
 
 
 56
 Thus, both BNS and Citibank are chargeable with notice that Joy presented bankruptcy funds for deposit and with knowledge that the acceptance of such funds for deposit in nondesignated banks violated the Bankruptcy Act. BNS and Citibank therefore took the bankruptcy fund deposits as constructive trustees or trustees ex maleficio and are absolutely liable for the subsequent misappropriations of these funds by the receiver, Joy.
 
 
 57
 In concluding as a matter of federal law[18] that BNS and Citibank are liable to Fidelity for accepting bankruptcy fund deposits in violation of the Bankruptcy Act, we need not reach the local law grounds for the district court's finding of liability. Although we predicate our decision on a ground different than that relied upon by the district court, we may nevertheless affirm a correct decision of the district court. PAAC v. Rizzo,502 F.2d 306, 308 n. 1 (3d Cir. 1974), cert. denied, 419 U.S. 1108, 95 S.Ct. 780, 42 L.Ed.2d 804 (1975).
 
 
 58
 The order of the district court directing that Fidelity recover the respective amounts claimed against BNS and Citibank plus interest will be affirmed.
 
 
 
 [1]
 Fidelity first asserted its claims against Quantum when Quantum was involved in proceedings under Chapter XI of the Bankruptcy Act, 11 U.S.C. § 701 et seq. Thereafter, in November, 1973, Quantum was adjudged a bankrupt
 
 
 [2]
 Under Virgin Islands law, a certificate of deposit is "an acknowledgment by a bank of receipt of money with an engagement to repay it." 11A V.I.C. § 3-104(2)(c) (1965). For our purposes there is no distinction between the principles applicable to demand or time deposits and certificates of deposit. "Legally, deposits on time certificates constitute a part of the deposit liability of a bank, just as much as those on demand certificates or in general checking accounts . . . ." Commissioner of Internal Revenue v. Ames Trust & Sav. Bank, 185 F.2d 47, 49 (8th Cir. 1950)
 
 
 [3]
 Fidelity's complaint also sought recovery of the proceeds of a certified check for $12,000 which Joy had withdrawn from the Quantum checking account. Apparently, Fidelity abandoned this claim in the district court. In Re Quantum Development Corporation, 397 F.Supp. 329, 333 (D.V.I.1975). Whether or not this claim was abandoned, the district court did not hold BNS liable for the $12,000 and Fidelity did not cross appeal. This claim is not, therefore, before us
 
 
 [4]
 Fidelity's suit against Citibank started before a bankruptcy referee in January, 1974. When it became apparent that the bankruptcy referee would himself be called as a witness in the proceeding, the district court judge assigned both the BNS and Citibank actions to himself under Bankruptcy Rule 102
 
 
 [5]
 Under Virgin Islands law,
 An indorsement is restrictive which . . .
 (c) includes the words "for collection", "for deposit", "pay any bank", or like terms signifying a purpose of deposit or collection; . . . .
 11A V.I.C. § 3-205 (1965).
 
 
 [6]
 11A V.I.C. § 3-419(4) provides:
 (4) An intermediary bank or payor bank which is not a depository bank is not liable in conversion solely by reason of the fact that proceeds of an item indorsed restrictively (§§ 3-205 and 3-206) are not paid or applied consistently with the restrictive indorsement of an indorser other than its immediate transferor. (Emphasis added.)
 The district court reasoned that this section implicitly imposed liability upon a depository bank which did not apply the proceeds of a check in accordance with the restrictive endorsement.
 
 
 [7]
 The district court relied upon Duckett v. National Mechanic's Bank of Baltimore, 86 Md. 400, 38 A. 983 (1897) and Bank of Giles County v. Fidelity & Deposit Co. of Maryland, 84 F.2d 321 (4th Cir. 1936)
 
 
 [8]
 The district court's July 24, 1975 order was amended on August 14, 1975 to delete certain collateral matters not relevant to this appeal. No appeal was taken from the amended order
 
 
 [9]
 The new Bankruptcy Rules, prescribed by the Supreme Court pursuant to 28 U.S.C. § 2075 (Supp.1976), are inapplicable to the rights of the parties in this case. These rules did not become effective in Chapter XI proceedings until July 1, 1974, and Quantum was in Chapter XI only until November 30, 1973. We note that the new rules carry forward without change the same basic requirements with respect to the depositing of bankruptcy funds in designated depositories. See Bankruptcy Rules 11-52, 605(b), 512
 
 
 [10]
 Section 47(a)(2) provided:
 a. Trustees shall . . .
 (2) deposit all money received by them in designated depositories initially in demand deposits; and subsequently, if authorized by the court, in interest-bearing savings deposits, time certificates of deposit, or time deposits-open account; . .
 This section was made applicable to Chapter XI proceedings by Section 302 of the Bankruptcy Act, 11 U.S.C. § 702. See also R. J. Reynolds Tobacco Co., Inc. v. A. B. Jones Co., Inc., 54 F.2d 329, 335 (8th Cir. 1931); General Orders in Bankruptcy Nos. 53(5), 48(2).
 The bankruptcy referee had instructed Joy to deposit the major portion of the Quantum funds in certificates of deposit. See p. 4, supra ; Tr. 136 (April 4, 1975).
 
 
 [11]
 Section 61, which applied to Chapter XI as well as to bankruptcy proceedings, see 3A Collier on Bankruptcy P 61.01(3) at 1346 (14th ed.), provided in pertinent part:
 The judges of the several courts of bankruptcy shall designate, by order, banking institutions as depositories for the money of estates under this Act, as convenient as may be to the residences of receivers and trustees, and shall require from each such banking institution a good and sufficient bond with surety, to secure the prompt repayment of the deposit. . . .
 
 
 [12]
 American Surety Co. v. Jackson, 24 F.2d 768 (9th Cir. 1928); Allen v. United States, 285 F. 678 (1st Cir. 1923); Board of Comm'rs v. Strawn, 157 F. 49 (6th Cir. 1907); Merchants' Nat'l Bank v. School Dist. No. 8, 94 F. 705 (9th Cir. 1899); see also Cook v. Elliott, 73 F.2d 916 (4th Cir. 1934); Coos County v. Berlin Nat'l Bank, 21 F.Supp. 523 (D.N.H.1937); 5 A. Scott, Law of Trusts § 528 (3d ed. 1967)
 
 
 [13]
 American Surety Co. v. First Nat'l Bank, 141 F.2d 411 (4th Cir.), cert. denied, 322 U.S. 754, 64 S.Ct. 1267, 88 L.Ed. 1583 (1944); In re Potell, supra; see also Hillsdale Grocery Co. v. Union & People's Nat'l Bank, 6 F.Supp. 773 (E.D.Mich.1934). Contra, Irving Trust Co. v. United States, 83 F.2d 20 (6th Cir. 1936); In re Bogena & Williams, 76 F.2d 950 (7th Cir. 1935); Rodgers v. Bankers' Nat'l Bank, 179 Minn. 197, 229 N.W. 90 (1930)
 
 
 [14]
 In Allen v. United States, supra, relied upon in In re Potell, the court held that the United States was entitled to recover against the bank's receiver all monies which had been deposited by a postmaster in a bank which thereafter became insolvent. Under statutes then in effect, the postmaster was forbidden to deposit public moneys in a depository that had not been authorized by the United States to receive such funds. Citing a number of "public fund-public officer" cases (see note 12 supra ) the court held that the bank had acquired these funds as trustee ex maleficio and that all such funds were held by the bank impressed with a trust in favor of the United States
 
 
 [15]
 We recognize that in two cases, Irving Trust Co. v. United States, supra note 13, and In re Bogena & Williams, supra note 13, involving similar circumstances, the courts reached conclusions contrary to In re Potell. Neither these cases nor In re Potell involve our exact situation. Irving Trust, Bogena, and Potell all concern claims by bankrupt estates against insolvent, nondesignated depositories. Our case does not. However, to the extent that these cases are analogous to ours, we regard the analysis and reasoning of Potell as more persuasive. See also American Surety Co. v. First Nat'l Bank, supra note 12, at 415
 
 
 [16]
 Although American Surety involved the misappropriation of bankruptcy funds in a straight bankruptcy proceeding and we are concerned here with the misappropriation of Chapter XI funds, the same statutory provisions and policy considerations are involved, thereby requiring the same rule of liability
 
 
 [17]
 This rule has been incorporated unchanged in the Restatement (Second) of Trusts § 324, comment b (1957)
 
 
 [18]
 The liability of banks accepting bankruptcy fund deposits in violation of the provisions of the federal Bankruptcy Act is a matter of federal law. See American Surety, supra at 416-17 relying upon Clearfield Trust Co. v. United States, 318 U.S. 363, 63 S.Ct. 1573, 87 L.Ed. 838 (1943) and Sola Electric Co. v. Jefferson Electric Co., 317 U.S. 173, 63 S.Ct. 172, 87 L.Ed. 165 (1942)