DAOUD A. HAMDALLAH, Plaintiff/Appellee

v.

VIRGIN ISLANDS WATER AND POWER AUTHORITY,
Defendant/Appellant

D.C. Civil No. 1987/80

T.C. Civil No. 1986/1240

District Court of the Virgin Islands

Div. of St. Croix

June 8, 1988

RICHARD D. KEELING, ESQ., St. Croix, V.I., *for appellee*

GEORGE W. CANNON, JR., ESQ. (LAW OFFICES OF ROSS & CANNON), St. Croix, V.I., *for appellant*

CHRISTIAN, *Presiding Judge;**  O'BRIEN, *District Judge;** and SMOCK, *Territorial Court Judge*

## OPINION

The Virgin Islands Water and Power Authority ("WAPA") appeals from a judgment of the Territorial Court of the Virgin Islands in which WAPA was permanently enjoined to restore and maintain electrical services at the office of the plaintiff/appellee, Daoud A. Hamdallah. The restored service was to be without interruption except for causes beyond WAPA's control, on condition that monthly charges for such service were timely paid. The trial court found that Rule 36 and Rule 21 of WAPA's Rules and Regulations were applied in a discriminatory and unreasonable fashion against Hamdallah. We affirm.

## I. FACTS

The facts are uncomplicated. On May 28, 1986, WAPA began supplying electricity to Hamdallah's office, one of many at the United Shopping Plaza in Christiansted, St. Croix. Hamdallah is a medical doctor and uses his office to see and treat patients. In order to monitor the amount of electricity for billing purposes, WAPA installs a sealed meter for each of its customers. Hamdallah's meter was in an area where meters were grouped for all tenants of the Plaza. Further, this area was a locked room, the keys to which were in the possession of the landlord and certain· representatives of WAPA.

---

\* Although Judge Christian was the presiding judge of the appellate division at the time of argument, Judge O'Brien became presiding judge on May 15, 1988, when Judge Christian took senior status.

On November 5, 1986, a meter serviceman employed by WAPA discovered that the seal to Hamdallah's meter was missing[1] and that a part of the meter called the "potential" was opened, causing the electrical current running through the meter to register improperly. In its altered condition, the meter would not measure all the current that actually was being used at Hamdallah's office. Approximately 11 of the more than 40 meters at United Shopping Plaza had been similarly altered. There was no evidence at trial that Hamdallah had tampered with his meter. It is uncontradicted that he did not even have access to it. Nevertheless, following standard instructions when faced with evidence of such alterations or tampering, the WAPA serviceman immediately disconnected Hamdallah's meter.

These instructions can be found in Rule 36 of WAPA's rules and regulations promulgated by virtue of the authority conferred upon WAPA by the legislature in 30 V.I.C. § 105(a)(3).[2] Rule 36 states:

> Tampering with the meter or with conductors carrying unmetered current and the unauthorized breaking of the Authority's [WAPA's] seals is prohibited and will not be tolerated by the Authority.
>
> Where electricity has been diverted by breaking meter seals or by-passing the meter or by another means, service will be disconnected and a charge of twenty-five dollars ($25.00) shall be paid before service is reconnected. In the event there are recurring instances of the diversion of electricity, service may be permanently disconnected.

30 V.I.R. § 105–36.

The trial court ruled from the bench, holding that as applied to Hamdallah, the rule was arbitrary and capricious in that it did not provide for notice or hearing before power was terminated. It enjoined WAPA and required it to restore Hamdallah's power.

---

[1] At the time of the initial hearing on November 17, 1986, there was testimony by Ray Belardo, WAPA's serviceman, that the seal was not broken. On November 24, 1986, however, he stated that, having reviewed his records since the previous hearing, they indicated that the seal had been missing from Hamdallah's meter on November 5, 1986.

[2] 30 V.I.C. § 105(a)(3) provides:

The Authority . . . is granted . . . power . . . to make . . . rules . . . not inconsistent with this chapter, providing for the internal organization and management of the Authority, for the administration of its affairs and operations, and for carrying into effect the power and purposes of the Authority.

However, the court did not reach the question whether the rule was arbitrary and capricious on its face or whether the rule was unconstitutional, although Hamdallah had asserted his due process rights. The trial court said:

> It also goes without saying that the rule in this case is restricted to the facts and circumstances which exist in this case and will not constitute a precedent for any other case, because each case will have to be examined on its own merits since the entire determination is based on the application of Rule 36 and Rule 21[3] in the context of non-discriminatory and reasonable application.

App. at 105, 106.

WAPA appeals. We have jurisdiction by virtue of 4 V.I.C. § 33 implementing 48 U.S.C.A. § 1613(a).

## II. DISCUSSION

■■ In an appeal involving the issuance of an injunction, we review the action of the trial court to determine if there was an abuse of discretion or commission of an obvious error of law. Tustin v. Heckler, 749 F.2d 1055 (3d Cir. 1984); Klitzman, Klitzman and Gallagher v. Krut, 744 F.2d 955 (3d Cir. 1984); Apple Computer, Inc. v. Franklin Computer Corporation, 714 F.2d 1240, 1242 (3d Cir. 1983), cert. dismissed, 104 S.Ct. 690 (1984). Further, because the subject matter of the appeal involves a challenge to a regulation promulgated by WAPA, another standard to be considered is whether the trial court applied the correct legal precepts in reaching the stated legal conclusions. Barnes v. Cohen, 749 F.2d 1009, 1013 (3d Cir. 1984).

In the instant action, we cannot subscribe to the reasoning of the trial judge although we affirm the outcome. We write to develop the correct legal standard.

The trial court found that Rule 36 was discriminatorily applied to Hamdallah. However WAPA applied the rule to Hamdallah as it does to everyone else. It found meter tampering, therefore, it discontinued Hamdallah's service. The rule requires such immediate action by WAPA's servicemen. It provides for no exceptions and

---

[3] Rule 21 concerns reconnection charges, and was referred to by the trial court solely for purposes of highlighting ambiguities between Rules 36 and 21 and the resulting confusion a customer might face in determining the amount of the reconnection charge to be paid WAPA in the event of a disconnection for tampering.

specifically makes no distinction between individual homeowners and occupants of commercial space such as Hamdallah's who have no access to their meters.

The trial court was concerned with WAPA's failure to investigate the specifics of each meter tampering before power termination. Yet, Rule 36 is silent on this question. Indeed it does not require such an investigation, so as to Hamdallah the rule was not applied discriminatorily.

We, therefore, consider whether the rule is in itself beyond the authority conferred upon the agency by statute. Alternatively we decide whether Rule 36 is arbitrary or capricious on its face. See, e.g., Branch v. Bryan, 18 V.I. 54 (D.V.I. 1980) (citing Pentheny Ltd. v. Government of the Virgin Islands, 360 F.2d 786, 790 (3d Cir. 1966)). See also Bencivenga v. Western Pennsylvania Teamsters and Employer's Pension Fund, 763 F.2d 574, 579 (3d Cir. 1985) (citing Batterton v. Francis, 432 U.S. 416, 424–26 (1977)).

■ WAPA's rule-making authority is a broad grant to fulfill its statutory purpose. This is vaguely defined to be ". . . to develop and utilize an adequate water and electric power system for the people of the Virgin Islands . . . and making the benefits thereof available for the inhabitants of the Virgin Islands in the widest economic manner consistent with sound fiscal management . . . ." 30 V.I.C. § 105(a). Unfortunately, that policy does not speak to WAPA's relationship with individual customers in any meaningful way. We cannot say, therefore, that WAPA went beyond its statutory grant of power in promulgating this rule unless the rule itself is arbitrary and/or capricious. In this regard we determine whether the rule, which assumes that a tampered meter was violated by its user, was rationally based on a review of the relevant factors. Motor Vehicle MFRS Assoc. v. State Farm Mut. Ins. Company, 463 U.S. 29, 43 (1983) (citation omitted).

■■ Again, the record is silent as to the considerations underlying WAPA's necessity for protecting itself from exploitation in this manner. Judge Christian is of the view that no set of considerations exist which lead one to conclude that the rule is rationally related to statutory purposes, so as not to be arbitrary and capricious. Judge O'Brien and Judge Smock agree with Judge Christian that the rule as written is based on a highly skeptical proposition, and void because of this. They believe further that the Court should not rest on this conclusion alone, because it is clear that the rule contravenes Hamdallah's due process rights to the

445

supply of electricity, which is reason enough to affirm the trial court.[4] See Myers v. City of Alcoa, 752 F.2d 196 (6th Cir. 1985) (power company's disconnection of electricity because of tampered meter without notice and hearing violates user's due process rights).

## III. CONCLUSION

Having determined that Rule 36 of WAPA's Rules and Regulations is void on its face, we therefore, affirm the judgment of the territorial court even though we do so because of different reasons than the trial court. See, e.g., Quantum Devel. Corp. v. Jay, 12 V.I. 642, 658, 534 F.2d 532 (3d Cir. 1976), cert. denied sub nom. First Nat. City Bank v. American Fidelity Fire Ins. Co., 429 U.S. 827 (1977). We add, therefore, that upon any consideration during a trial for damages, the trial court might consider modifying its injunction to extend beyond the facts of this case.[5]

## JUDGMENT

THIS MATTER is before the Court on appeal from the Territorial Court of the Virgin Islands. The Court having filed its opinion of even date herewith, and the premises considered, now therefore it is

ORDERED and ADJUDGED:

THAT the judgment of the Territorial Court of the Virgin Islands be and the same is hereby AFFIRMED.

---

[4] Judge Christian hesitates to reach the constitutional question based upon the Third Circuit's admonition against unnecessarily reaching constitutional issues. See Frett v. Gov't of the Virgin Islands, 839 F.2d 968 (3d Cir. 1988).

[5] It is well recognized that the violation of a constitutional right is sufficient cause for the issuance of an injunction. See West Indies Co., Ltd. v. Government of the Virgin Islands, 643 F. Supp. 869 (D.V.I. 1986), aff'd 812 F.2d 134 (3d Cir. 1986).